Bernard DODD, Appellant,

v.

**TEXAS FARM PRODUCTS, Appellee.**

**No. 1147.**

Court of Civil Appeals of Texas, Tyler.

June 22, 1978.

---

Larry R. Daves, Tyler, for appellant.
William D. Perkins, Lufkin, for appellee.

McKAY, Justice.

Appellant brought suit against appellee for damages for personal injuries which were received by appellant on the premises of appellee. Trial was before a jury, and after a verdict was returned for appellant the trial court granted appellee's motion for judgment non obstante veredicto, hence this appeal by appellant.

Appellant alleged that he was injured when a retaining wall and bulk potash collapsed on him after he and a fellow workman had loosened the potash in a bin by blasting in order to move it to another bin, and that appellee was negligent in several respects. Appellee, among other allegations, pled that appellant was injured as a result of his own negligence or that of his fellow employee, or both; that conditions existed in the premises where appellant was employed which were open and obvious to appellant, and that appellant voluntarily assumed any risk involved in the work in which he was engaged. The jury found that appellee, its agents or employees, failed to inspect the retaining wall after the blast, that such failure was negligence, and such negligence was a proximate cause of his injuries; appellant was not found to be contributorily negligent. Damages of $86,-000 were found by the jury.

Previously appellant brought suit against Twin City Fire Insurance Company in a worker's compensation action based on the same incident. The opinion of this court in that case is reported in 535 S.W.2d 416, and that of the Supreme Court is found in 545 S.W.2d 766.

Lone Star Phosphate Company is a corporation which ships phosphate rock from Florida and acidulates it with sulphuric acid which breaks it down into solvable form so as to make it available for plant food. Texas Farm Products Co. is a sister corporation with common officers and stockholders with Lone Star, and its plant is adjacent to that of Lone Star. Texas Farm Products manufactures and distributes feed and health products for animals. At times there was interchange of personnel between the two plants. Phosphate is a salt-type material, and after it is stored it will "set up hard, such that it's necessary to shake it loose," and a lowgrade, slow-burning type explosive is used to loosen the material—such explosive made especially for that specific purpose.

Appellant had previously worked for appellee (approximately 15 years) but at the time of his injury (and for approximately 5 years before) he was an employee of Lone Star. At the time of his injury appellant was asked by his foreman, Jerry McShan, to go to Texas Farm to move potash or sulphate. McShan also took other employees of Lone Star to the Texas Farm premises. Appellant and McShan placed the explosives in a hole drilled in the sulphate and lit the fuse. Appellant testified ". . . it blowed out. It blowed down a few buckets," and that he was then asked to "go in and move what little was blowed down." He further testified there was a retaining wall 10 or 12 feet above his head "hanging down" and that the blast "blowed a big belly out of it there. . . . and I picked it up, several buckets up and I heard it pop, and I told my boss, I said I wasn't going back in there no more, so he told me, well, just before he told me that, him and Mr. Clarence walked off and talked and he came back and told me, he asked me 'if I knock it down, will you pick it up.' I told

him yes, if it didn't kill him, I don't guess it'll kill me."

Appellant described events that followed: "And he went in and took the dipper and run up between the board and bumped the board and knocked it down and I picked it up and got down to the last bucket, I went down on the floor and raised the rear-end of the tractor up, the motor part, and I was going to drop it to make the dipper slide up, and when I did that, the wall fell down on me and the tractor, and I just turned sideways to get off—trying to get off the tractor, and it fell on this side of me, and had this side pinned to the tractor, and I was laying down there. This leg here was sticking down in there and the steering wheel was buried in this leg here, and they had to use a hacksaw to cut it to get me out of there." Clarence Riddle was McShan's superintendent, and was superintendent for both Lone Star and Texas Farm, according to appellant's testimony.

Appellant also testified that McShan "was nice about it. He asked me nice would I do it; he didn't try to make me or nothing." In response to his counsel's question as to whether he had any choice in terms of whether he "could say no, I'm not going to do it, or anything else," appellant replied, "Well, not offhand. If I did, I figured I'd be fired." He further said that when he told McShan he was not going back in there, he told him he thought the angle iron was bent, and they stood and looked at it, and he told McShan, "let's go back to the phosphate plant and leave it alone and that's when Mr. Riddle came up and they went out and was talking . . ." In answer to the question whether Riddle looked at the retaining wall appellant said, "I believe Mr. Riddle glanced. I don't believe he just looked and saw just exactly what was going on," and that no one warned him that the wall was going to fall. Appellant later testified that he did not think that Riddle even glanced at the bin.

McShan testified that he looked at the retaining wall as he was driving a pay-loader in to load up; that there was nothing wrong with the wall; that at one time he

thought he saw it move, but he went on and said, "Well, it must not have moved," and he kept going. McShan further testified that appellant did not say anything to him about being afraid the retaining wall might fall.

■ In his first point appellant complains that the trial court erred in rendering judgment for appellee notwithstanding the verdict because there was evidence to support the jury's answer to issue two that the failure of appellee to inspect the retaining wall after the blast was negligence. In order to sustain the action of the trial court in granting a motion for judgment non obstante veredicto, there must be a determination that there was no evidence having probative force upon which the jury could have made the finding relied upon. *Burt v. Lochausen*, 151 Tex. 289, 249 S.W.2d 194 (1952); *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547 (1962). In passing upon such a point the evidence must be considered in a light most favorable to the jury finding, considering only the evidence and inferences which support the verdict and rejecting the evidence and inferences which are contrary thereto. *Burt v. Lochausen*, supra. A judgment n. o. v. can only be upheld on appeal when a directed verdict would have been proper. Rule 301, T.R.C.P.; *Grundmeyer v. McFadin*, 537 S.W.2d 764, 768 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.).

The jury in issue 4[1] failed to find that Clarence Riddle had knowledge that the retaining wall was in need of repair immediately before the accident, and in issue 11[2] the jury did not find that appellant failed to exercise ordinary care for his own safety.

■ If the owner or occupant of premises invites others to come upon his premises he owes such persons the duty to have such premises in a reasonably safe condition and to give warning of concealed or latent perils. *Carlisle v. J. Weingarten, Inc.*, 137 Tex. 220, 152 S.W.2d 1073, 1074 (1941). If the injured person was a licensee the duty owed him by the owner or occupier of premises is not to injure him by willful, wanton or gross negligence; but if licensor knows of a dangerous condition, and licensee does not, a duty is owed to either warn the licensee or to make the condition safe. *State v. Tennison*, 509 S.W.2d 560 (Tex. 1974); *Lower Neches Valley Authority v. Murphy*, 536 S.W.2d 561, 562–3 (Tex.1976). Negligence is the breach of a duty; it is the failure to exercise ordinary care, or the doing of something that a person of ordinary prudence would not have done under similar circumstances or the failure to do something that a person of ordinary prudence would have done under the same or similar circumstances. 40 Tex.Jur.2d, Part 2, p. 117.

■ If the retaining wall was in a dangerous condition appellee owed a duty to repair it to make it safe. This duty arises, however, when appellee learns of the dangerous condition, or in the exercise of reasonable diligence should have known of it. The record before us does not reflect that appellee knew of the dangerous condition of the retaining wall. In our opinion there is no evidence that appellee knew of such dangerous condition or in the exercise of reasonable diligence should have known of it. The dangerous condition was apparently caused by the explosion set off by appellant and McShan, his foreman. The record reflects that Riddle was the only employee of appellee in the vicinity of the accident, and there is no evidence in the record that Riddle knew of the danger. Riddle did not testify. There is no evidence the work was under his direct control. If appellee, its servants, agents and employees did not know of the dangerous condition, and such

1. "SPECIAL ISSUE NO. 4
"Do you find from a preponderance of the evidence that Clarence Riddle had knowledge that the retaining wall was in need of repair, if it was, immediately prior to the occurrence in question?
"Answer: 'We Do' or 'We Do Not'
"ANSWER: 'WE DO NOT' "

2. "SPECIAL ISSUE NO. 11
"Do you find from a preponderance of the evidence that Plaintiff failed to exercise ordinary care to take proper measures for his own safety?
"Answer: 'We Do' or 'We Do Not'
"ANSWER: 'WE DO NOT' "

dangerous condition had not existed long enough that a reasonably prudent person would have discovered it, then appellee cannot be charged with or be guilty of negligence.

■ This was an unfortunate accident under unusual circumstances. However, appellant had the burden of producing evidence of probative force upon which the jury could have found that appellee was negligent. This he has been unable to do. In considering only the evidence and inferences which support the verdict of negligence against appellee, and rejecting the evidence and inferences which are contrary thereto, we hold there is no evidence to support the verdict. In our view a directed verdict would have been proper. Appellant's point of error one is overruled.

In view of our holding on appellant's first point of error, we do not reach appellant's second point of error wherein he contends the trial court erred in granting judgment non obstante veredicto because there was evidence to support the jury's finding in special issue 11 that appellant did not fail to exercise ordinary care to take proper measures for his safety.

Judgment of the trial court is affirmed.