Donald P. DOWLING, Petitioner,

v.

NADW MARKETING, INC., et al., Respondents.

No. C–995.

Supreme Court of Texas.

April 14, 1982.

Rehearing Denied May 12, 1982.

Dowling & Wilson, Larry Dowling, Carroll Clarke Cook, Jr., Austin, for petitioner.

Holley & Holley, Lamar Holley, Dallas, for respondents.

WALLACE, Justice.

Donald P. Dowling (Dowling) sued NADW Marketing, Inc. and Henry Premeaux (NADW) for violation of the Deceptive Trade Practices Act and for common law fraud. The trial court rendered judgment n. o. v. for NADW. The court of appeals affirmed. 625 S.W.2d 392. We reverse the judgment of the court of appeals and render judgment for Dowling.

NADW was in the business of selling distributorships in specific geographic territories in Texas. A distributorship carried the right to solicit and sell automotive dealers a public relations program designed by NADW. The program contained provisions for any warranty issued by the dealer plus discounts on used car repairs and towing service. NADW trained the distributor and his employees and sold the distributor the printed materials to be used. NADW advertised in a Dallas newspaper as follows:

> Business Opportunity—Distributorship Now Available—Automotive Customer Relations System—No competition—No franchise fees—No residuals—Firm buy back agreement—Your investment completely secured—No experience necessary because we completely train you.

In response to the ad, Dowling contacted NADW and they subsequently entered into a written contract whereby Dowling purchased two territories including the Dallas-Fort Worth Metroplex, for a total of $24,500. NADW trained Dowling and two of his employees for a week and delivered the necessary material which was paid for by Dowling. After about a week of operations, Dowling became disillusioned and asked for a return of his money. NADW offered to resell his territory and remit to him the net proceeds of the sale. The exact amount of the proceeds expected was disputed but was between $19,500 and $24,500.

The issues are: (1) did the jury verdict support a judgment for Dowling and (2) was there evidence to support the jury verdict.

NADW contends, and the court of appeals held, that any representation as to a firm buy back agreement was a promise to do an act in the future, and to sustain a judgment for Dowling, it was necessary that the verdict contain a finding that at the time of making the promise NADW intended not to perform. The court further found that there was not a jury finding that at the time of making the promise NADW intended not to perform. In answer to Special Issues the jury found as follows:

1. NADW, through its newspaper ad, represented to Dowling that there would be a firm buy back agreement;
2. That such representation was false;
3. That such representation was made for the purpose of causing possible purchasers to act in reliance on the representation;
4. Dowling relied on the representation in entering the contract with NADW;
5. The representation that there would be a firm buy back agreement was made with knowledge that it was false;
6. Such representation was material to Dowling in entering the contract;
7. Dowling was damaged as a result of his acting in reliance on such false representations.

The jury found that NADW had made a false statement knowing that it was false and made it with intent to induce action by Dowling. This is equivalent to an intent to deceive. *Texas Industrial Trust v. Lusk,* 312 S.W.2d 324 (Tex.Civ.App.—San Antonio 1958, writ ref'd). Lusk had purchased

shares of the corporate stock of Texas Industrial Trust based upon the promise that she would get at least $1.00 per share after January 1, 1955; that the stock would pay dividends; and that she could borrow money on the stocks. The stock proved worthless and Lusk sued for fraud. The jury answered issues almost identical to the issues quoted above. The court of appeals found that the verdict was sufficient to support a judgment for fraud, for failure to perform a promise because the promise was made with the knowledge that it was false and with the intent that it be relied on by Lusk. The court stated that, "The utterance of a known false statement, made with intent to induce action, in our opinion, is equivalent to an intent to deceive." 312 S.W.2d at 327.

We hold that the jury findings support a cause of action for fraud. The statement "firm buy back agreement—investment completely secured" was a promise to perform in the future which was made without a present intent to perform; for the purpose of inducing Dowling to enter the contract; and Dowling relied on the representation to his detriment.

To sustain the action of the trial court in granting the motion for judgment notwithstanding the verdict, it must be determined that there is no evidence upon which the jury could have made the findings relied upon. In acting on the motion, all testimony must be considered in a light most favorable to the party against whom the motion is sought and every reasonable intendment deducible from the evidence is to be indulged in that party's favor. *Douglass v. Panama, Inc.*, 504 S.W.2d 776 (Tex. 1974).

The newspaper ad itself was introduced into evidence and is some evidence of the representation. Mr. Dowling testified that the repurchase agreement contained in the contract was not the buy back agreement which he expected from the newspaper ad, and that "firm buy back agreement—your investment fully secured" meant to him that "... any individual

availing themselves of the business opportunity has, as they advertised, a firm buy-back agreement." Dowling wrote a letter to NADW terminating his contract "... because of misrepresentations made to me relative to your program that materially affected my decision to become involved." Mr. Neuenhaus, president of NADW, testified that "firm buy back agreement—your investment completely secured" only meant what was stated in Paragraph VIII of the contract. Paragraph VIII of the contract stated:

### VIII Repurchase of Stock

NADW agrees to repurchase any NADW materials purchased after the original order, at the prices listed in Exhibit B within 30 days after receipt of said materials by DISTRIBUTOR, conditioned upon returned materials being in good and resellable condition.

In response to counsel's questioning, Mr. Neuenhaus responded that nobody would guarantee a man who bought such a territory that he would automatically get his money back. "I'm forty-five, I've never had one, I've never given one and I have never expected one," (a money back guarantee). Furthermore, Mr. Neuenhaus testified that what he planned and intended to offer at all times was only the agreement in Paragraph VIII of the contract. The following is taken from the Statement of Facts.

Q. (to Mr. Neuenhaus) You weren't planning to offer him a firm buy back agreement?

A. Yes I was, this is a firm buy back.

Q. ... on the terms of a return of his investment, were you?

A. No.

Q. Okay, that was and all you had was what was in that contract?

A. Absolutely.

Mr. George Rodenheiser, a former distributor of NADW, testified when asked what "firm buy back agreement" meant to him, "[w]ell, it meant to me that if I spent my $14,500 and something happened that this didn't work, well, then, I would get my

money back ...." We find evidence to support the jury verdict, thus the trial court erred in rendering judgment n. o. v. for NADW.

NADW contends, and the court of appeals found, that the newspaper ad did not constitute a representation but was merely "puffing." We disagree. The ad promised a specific act, a firm buy back agreement would be offered and that the distributor's investment was fully secured. This specific promise is not "puffing." "Puffery" is an expression of opinion by a seller not made as a representation of fact. *Gulf Oil Corp. v. Federal Trade Commission*, 150 F.2d 106, 109 (5th Cir. 1945).

NADW further contends that Dowling was judicially estopped from bringing the cause of action for fraud based on the newspaper ad alleging a firm buy back agreement inasmuch as he pleaded in his original petition that there was a firm buy back agreement. In his original petition, Dowling pleaded separate causes of action under the Deceptive Trade Practices Act, and for common law fraud. In the alternative, he pleaded that if the firm buy back agreement, as set out in the newspaper ad, was satisfied by the terms of the contract he entered into with NADW, then, and in that event, he be permitted to return to NADW all the materials he had purchased from them and that his purchase money be returned "... pursuant to the firm buy back agreement contained in Paragraph VIII of the contract." This was simply alternative pleading on Dowling's part and does not constitute a judicial admission.

There is some evidence to support the jury's findings, and NADW was not entitled to a judgment as a matter of law, so we must reverse the judgment of the trial court.

We reverse the judgment of the court of appeals and render judgment for Dowling for the sum of $12,000.00 plus attorney's fees of $8,750.00.