**EXXON CORPORATION, Petitioner,**

v.

**Charles Randy QUINN et ux., Respondents.**

**No. C–4696.**

Supreme Court of Texas.

March 4, 1987.

Rehearing Denied April 8, 1987.

G. Alan Kramer, Pamela J. Ashley, Houston (Ramey, Flock, Hutchins, Jeffus, McClendon & Crawford, Tyler, of counsel), for petitioner.

Russell H. McMains, McMains & Constant, Corpus Christi, Fred L. Nix, Lynn S. Patton, Patton & Nix, Longview, for respondents.

SPEARS, Justice.

This is a personal injury case involving the duty owed by a landowner to employees of an independent contractor. Charles Randy Quinn sued Exxon Corporation for injuries he sustained while working on a utility pole on an Exxon lease. The trial court rendered judgment notwithstanding the verdict in favor of Exxon. The court of appeals in an unpublished opinion reversed the judgment of the trial court and rendered judgment for Quinn. We reverse and remand the cause to the court of appeals.

On July 1, 1980, plaintiff Quinn, an employee of Woodard Electric Company, was injured when a utility power pole on which he was working was reenergized by C.J. Joyner, Woodard's on-site foreman. It is undisputed that Woodard is an independent contractor. The Woodard crew was called to the Exxon lease to "drop-out" a power line running between two Exxon utility poles, one of which was no longer in service. The electrical power to the in-service Exxon pole was provided by a Southwestern Electric Power Company (Swepco) pole.

In order to "drop-out" the power to the unused pole, Quinn was required to climb the energized power pole. To reach the line, Quinn would ascend over energized parts of the pole, power transformers, and jumper wires which ran between the transformers. The jumper wires were positioned so that Quinn had to press the wires against the pole to perform his work.

The usual and customary safety operation employed in Quinn's task is known as the Swepco "red tag procedure." The red tag procedure involved calling Swepco, who would then come out to its power pole and disconnect the power to Exxon's energized pole. Swepco would then write the name of the person to climb the pole (Quinn) on a red tag and would not reconnect the power until the person had completed his task and signed his name on the red tag. This procedure, employed by Exxon and Woodard in the past, made sure that the pole being climbed and worked on would not be reenergized until the climber was back on the ground. Unfortunately, on the date in question, the red tag procedure was not used.

When Joyner and Quinn arrived on the lease, Exxon's onsite representative, Fred Crumley, inquired whether Swepco should

be called to come out and perform the red tag procedure. Joyner declined and stated he would operate the Swepco disconnects while Quinn was on the pole.

Quinn climbed the pole, performed the drop-out and began his descent. Once below the jumper wires which he had pressed into the pole, Quinn reached up to straighten the wires. At this point, Joyner, who was on the ground operating the disconnects, could only see Quinn's shoulders because the transformers blocked his view of Quinn's head and hands. Seeing Quinn below the transformers, Joyner thought Quinn was away from any danger area. Joyner then reconnected the Exxon pole to the Swepco pole, thereby energizing the Exxon pole and the jumper wires which Quinn was positioning. Quinn suffered a severe electrical shock and other injuries resulting from his fall from the Exxon pole.

Quinn and his wife, Rebecca, sued Exxon. The Quinns also brought a worker's compensation action against Woodard and Joyner which is not part of this appeal. The jury found Exxon negligent in participating in the decision not to call Swepco, which was a proximate cause of Quinn's injury. The jury also found Exxon negligent in failing to provide a safe place to work and such negligence was a proximate cause of Quinn's injuries. Quinn's negligence was not a proximate cause of his injuries. Over Exxon's objection, no issue was submitted regarding Joyner's participation in the accident. The jury awarded Quinn $1,500,000 in damages. The trial court, however, rendered judgment notwithstanding the verdict in favor of Exxon.

The court of appeals reversed the judgment of the trial court and rendered judgment for plaintiff Quinn in accordance with the jury verdict. The court of appeals relied on special issue No. 1 submitted to the jury and stated that Exxon's participation in the decision not to call Swepco is "consistent with a theory of recovery upon conventional common law negligence grounds." As submitted, special issue No. 1 asked:

Do you find from a preponderance of the evidence that Fred Crumley participated in the decision not to request SWEPCO to disconnect and reconnect the SWEPCO switches controlling the supply of electricity to the EXXON pole on which CHARLES RANDY QUINN was injured?
ANSWER: We do.

The court of appeals stated that even though Quinn was an employee of Woodard, an independent contractor, Exxon owed Quinn the same duty it owed to all persons, that is, to exercise reasonable care in its conduct and avoid foreseeable harm. The court of appeals did not address the jury finding that Exxon breached its duty to provide Quinn a safe place to work.

In reviewing whether the trial court's judgment n.o.v. was proper, we must view the evidence admitted at trial in favor of Quinn and determine that there is no evidence upon which the jury could have found for Quinn. *Dowling v. NADW Marketing, Inc.*, 631 S.W.2d 726, 728 (Tex. 1982); *Dodd v. Texas Farm Prods. Co.*, 576 S.W.2d 812, 814 (Tex.1979).

On appeal to this court, Exxon argues the jury's finding that Exxon "participated" in the decision not to employ Swepco's red tag procedure is legally insufficient to impose liability for negligence. More precisely, Exxon argues that since it did not retain the right to control the manner in which Woodard performed the job assignment, its failure to call Swepco or to stop Joyner and Quinn from performing the drop-out until Exxon could call Swepco was not negligence. We agree.

An owner or leaseholder is generally not obligated to require an independent contractor to perform an on-premises activity in a safe manner. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985). Moreover, it is well established that the responsibility for conducting a task in a safe manner rests with the independent contractor and not the premises owner "where the activity is conducted by, and is under the control of an independent contractor, and where the danger arises" out of the employees' performance of the task.

*Abalos v. Oil Development Co.*, 544 S.W.2d 627, 631 (Tex.1976). The landowner in an independent contractor relationship, however, may be liable when he retains the right to control the contractor's work but fails to exercise his retained control with reasonable care. *Redinger*, 689 S.W.2d at 418; *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469, 470 (Tex.1985); RESTATEMENT (SECOND) TORTS § 414 (1977). Control, or the right to control, when resting with the landowner, then, is paramount to recovery.

■ In this case, Exxon had no control nor the right to exercise control over the details or supervise the manner in which Woodard performed its assignment. Both Quinn and Joyner testified at trial that Woodard was responsible for the details and the manner of performing the line drop-out. The special issues submitted by Quinn and found by the jury concern only whether Exxon "participated" in the decision not to call Swepco. The "participation" found by the jury does not reach the necessary level of "control" required to create liability in this case.

In *Redinger*, the defendant general contractor's foreman supervised the work site and gave the order which placed the plaintiff in jeopardy. In *Tovar*, the defendant's on-site representative suggested that the manner of operation posed a danger to the plaintiff and the defendant further had the contractual right to order the work to be performed in a different manner. In the instant case, Crumley had no right to interfere in Woodard's operation; therefore, he had no right to acquiesce in the decision not to call Swepco or to employ Swepco's red tag procedure. Even if he had acquiesced in Woodard's decision, such participation is not enough to establish control. Joyner testified that he told Crumley that the line drop-out " 'won't take but a few minutes, I would just as soon open and close it [the disconnect] myself'." Quinn testified to a slightly different version, but the impact was still that it was Woodard, not Exxon, who decided that Swepco would not be called.

Quinn did not submit special issues on Exxon's control. Furthermore, the record contains no evidence that Exxon exercised control or had the right to exercise control. Without establishing control, Exxon, under these facts was not obligated to supervise the manner in which Woodard handled the disconnects and reenergizing. Exxon, therefore, as a matter of law is not liable for participating in the decision not to call Swepco or for failing to require that Woodard employ the red tag procedure. The trial court's granting a judgment n.o.v. as to special issue No. 1 was proper. In order to sustain the trial court's judgment n.o.v., however, we must determine that the judgment is proper as to all possible grounds of recovery. *Dowling*, 631 S.W.2d at 728; *Dodd*, 576 S.W.2d at 814.

■ In addition to possible liability for negligence arising because of an on-premises activity, a leaseholder may be liable for negligence arising from a defect on the premises. *Redinger*, 689 S.W.2d at 417; *see also Edwards v. Shell Oil Co.*, 611 S.W.2d 904, 906 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.). Quinn secured a jury finding that Exxon was negligent for failing to provide a reasonably safe place to work. The court of appeals did not address this theory of recovery. Exxon argues that there is no evidence that it failed in its duty to provide Quinn a reasonably safe place to work. We disagree.

Exxon argues that Joyner's reenergizing the utility pole before Quinn had reached the ground requires this case be reviewed only under the activity-control standards previously discussed. The jury found, however, that Exxon's premises were unsafe at the time the Woodard crew entered. Special issue No. 3 asked:

> Do you find from a preponderance of the evidence that Exxon Corporation was negligent, which negligence was a proximate cause of Charles Randy Quinn's injuries, by failing to provide a reasonably safe place for Charles Randy Quinn to work?

> In answering this question you shall consider only whether Exxon Corporation was negligent:

(1) in the positioning of the disconnect switches on the Exxon pole in which plaintiff, Charles Randy Quinn was working; or

(2) in the positioning of the transformers on the Exxon pole on which plaintiff, Charles Randy Quinn, was working; or

(3) in positioning the "jumper wires" between the transformers on the Exxon pole on which plaintiff, Charles Randy Quinn, was working.

ANSWER: We do.

At trial, Quinn's expert testified that the pole Quinn worked on was defective because the power disconnects were positioned too low on the pole; the transformers were positioned so that they blocked Joyner's view of Quinn working; and finally, the jumper wires running between the transformers should have been on the other side of the pole. Exxon's expert testified that the pole design was common throughout the area. Exxon further points out that no evidence was introduced that any of the alleged design defects violated industry safety standards.

█ Exxon also asserts that the "unsafe premises" theory is really subterfuge for Quinn's inability to support the jury's finding of proximate cause. Proximate cause consists of (1) cause in fact, and (2) foreseeability. *Farley v. M M Cattle Co.,* 529 S.W.2d 751, 755 (Tex.1975). Proximate cause must be established by probative evidence, not by mere conjecture or guess. *Id.*

█ Exxon attempts to refute the jury's finding of proximate cause by showing that this accident resulted from a breakdown in proper work procedures which *then* created a hazard involving the use of ordinary tools of trade. While agreeing that it has a duty to provide a reasonably safe place to work, Exxon contends that finding liability under these facts would require Exxon to provide an accident-proof work site rather than just a reasonably safe one. Additionally, Exxon argues Joyner's reenergizing the pole before Quinn was on the ground was unforeseeable when considering Joyner's long electrical experience and that the most basic safety rules for working with electric lines forbids reconnecting the power until the worker is on the ground.

To further support its argument of unforeseeability, Exxon relies on *Colvin v. Red Steel,* 682 S.W.2d 243 (Tex.1984). In *Colvin,* this court stated that in order for Red Steel to have foreseen the probability of an accident occurring because steel purlins did not meet specifications, Red Steel must also have foreseen that Colvin would violate standard industry safety procedures in completing his job assignment. In drawing an analogy to *Colvin,* Exxon argues that for it to foresee that the placement of the transformers and jumper wires would result in Quinn's injury, Exxon must also have foreseen that Joyner would reenergize the utility pole while Quinn was still working.

Quinn distinguishes *Colvin,* noting that Colvin, by not following universal safety standards, created the condition which precipitated his fall. In this case, says Quinn, the alleged defects on Exxon's power pole, not Joyner's premature reenergizing the pole in violation of industry safety standards, created the hazardous condition which resulted in his injuries. Quinn also points out that Joyner testified that he (Joyner) would not have activated the Swepco pole if he could have seen Quinn still working, but the transformer blocked his view. Furthermore, by positioning the jumper wires on the only side available to climb the pole and opposite from the Swepco pole, it was foreseeable that Joyner might reenergize the pole while Quinn was still in contact with the wires.

When viewing the evidence most favorably to Quinn, we decline to hold as a matter of law that Exxon's premises were reasonably safe and Joyner's reactivating the power pole was the sole proximate cause of Quinn's injury. Furthermore, the jury was instructed both on proximate cause and on new and independent cause. Once instructed, the jury determined that Exxon was negligent by failing to provide a reasonably safe work place and that the negligence was a proximate cause of Quinn's injuries. Although there is some evidence to support the jury's finding, any

questions regarding the sufficiency of the evidence on the issues of safe place to work and proximate cause are for the court of appeals to weigh. *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986).

Accordingly, we reverse the judgment of the court of appeals and remand this cause to the court of appeals for resolution consistent with this opinion.

HILL, C.J., filed a dissenting opinion in which CAMPBELL, WALLACE and GONZALES, JJ., join.

HILL, Chief Justice, dissenting.

I dissent. I disagree with the majority's conclusion that there is evidence that Exxon's failure to provide a safe place to work was a proximate cause of Quinn's injuries.

This Court recently reaffirmed that an injury is not foreseeable when it would not have occurred but for the unforeseeable conduct of someone other than the defendant. *See Colvin v. Red Steel Co.*, 682 S.W.2d 243, 245 (Tex.1984). The undisputed evidence in this case is that Quinn would not have been injured but for the fact that Joyner prematurely reenergized the utility lines in violation of the electric industry's safety procedures. There is no evidence in the record to support a finding that Exxon could have foreseen such conduct; thus, there is no evidence that Exxon proximately caused the accident.

The majority circumvented this well-established rule of law by concluding that there is evidence of proximate cause because Exxon's defective power pole, "not Joyner's premature reenergizing of the pole in violation of industry standards, created the hazardous condition which resulted in Quinn's injuries." 726 S.W.2d at 21. This reasoning conflicts with principles of tort law long recognized by this Court. "Where the facts show that the original act of negligence was superseded by a new and independent cause, courts have applied the rule of nonliability where the consequences of the new cause could not have been reasonably anticipated or foreseen." *Robert R. Walker, Inc. v. Burgdorf*, 150 Tex. 603, 609, 244 S.W.2d 506, 509 (1952). The evidence establishes that Joyner's conduct occurred after Exxon built the defective utility pole and that Quinn's injuries would not have occurred but for Joyner's actions. Joyner's conduct superseded Exxon's creation of a hazardous condition. Thus, under established case law, the dispositive issue is not whether Exxon created a hazardous condition by erection of a defectively designed utility pole, but rather whether Exxon should have foreseen that someone would prematurely energize the utility lines.

A comparison of *Colvin* and this cause clearly demonstrates that *Colvin* should control the disposition of this issue. In *Colvin*, the defendant created a *hazardous condition* by manufacturing purlins shorter than specified. *Colvin*, 682 S.W.2d at 245. Similarly, in this cause, there is evidence that Exxon created a hazardous condition by building a defectively designed utility pole. In *Colvin*, there was evidence that, after the hazardous condition was created, the plaintiff and his coworkers violated industry safety standards when they placed the purlins atop some trusses, and that their conduct was a cause-in-fact of the plaintiff's injuries. *Id.* Likewise, there was undisputed evidence here that Joyner violated industry safety standards after Exxon created a hazardous condition and that his violation was a cause-in-fact of Quinn's injuries.

In every relevant aspect, the facts of *Colvin* and this cause are indistinguishable. Therefore, under *Colvin*, Quinn was required to produce evidence that Exxon should have reasonably foreseen that Joyner would prematurely reenergize the line and injure Quinn. The majority, however, holds that there need only be evidence that Exxon created a hazardous condition that was a cause-in-fact of Quinn's injuries. By adopting that rule, the majority has not only overruled the sound reasoning in *Colvin*, but has also disregarded the well-established rule of law that an action for negligence cannot be sustained unless the plaintiff produces probative evidence that his injuries were the *foreseeable* consequence of the defendant's conduct. *See Farley*, 529 S.W.2d at 755.

For these reasons, I would reverse the court of appeals and affirm the trial court's judgment notwithstanding the verdict in favor of Exxon.

CAMPBELL, WALLACE and GONZALEZ, JJ., join in this dissenting opinion.