In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00115-CV


______________________________







IN RE: ESTATE OF LARRY FLOYD SILLICK, DECEASED







 


On Appeal from the 62nd Judicial District Court


Franklin County, Texas


Trial Court No. 8985




 



Before Morriss, C.J., Grant and Cornelius,* JJ.


Opinion by Chief Justice Morriss



________________________________

*William J. Cornelius, Retired, Chief Justice, Sitting by Assignment

O P I N I O N



I. 


Statement of the Case


 The jury found Larry Floyd Sillick's holographic April 1993 Last Will and Testament was
entirely in his handwriting. The jury also found the purported holographic 1998 will was not
entirely  in  his  handwriting.  On  appeal,  Sheila  Frazier  brings  the  following  points  of
error: (1) the court erred by denying her motion for judgment notwithstanding the verdict; (2) the
evidence is factually insufficient to support the verdict; and (3) the court erred by admitting
evidence that the decedent and his wife had attempted to reconcile before his death.II. 

Facts

 On August 8, 1998, Larry Floyd Sillick died as a result of an automobile accident. Larry
was survived by his wife, Carolyn Sillick, his sister, Sheila Frazier, and his son, Larry Shane
Sillick (hereinafter Shane). Carolyn testified that in 1993 Larry drafted a holographic will,
leaving one dollar to his children and the remainder to Carolyn. She also testified that she
drafted a similar will leaving everything to Larry. However, on March 2, 1998, Carolyn filed for
divorce from Larry, but Larry died before the divorce became final. On his death, Larry's sister,
Sheila, brought forth a second will to be probated. The second will devises all of Larry's
property, but fails to name a beneficiary. However, the envelope in which the document was
allegedly found stated "Personell [sic] Property of Sheila Frazier by Larry Sillick 3/7/98, Open in
the Event of my Death, sealed by Larry Sillick 3/7/98." At trial, Sheila contended the 1998 will
was entirely in Larry's handwriting and operated to revoke the 1993 will. The jury returned a
verdict invalidating the 1998 will and Sheila appeals.

III. 

Discussion

A. Did the trial court commit error by denying Sheila's motion for judgment notwithstanding the verdict? 


 On a motion for judgment notwithstanding the verdict, all evidence must be considered
by the trial court in the light most favorable to the jury's verdict, every reasonable inference
deducible from the evidence must be indulged in favor of the verdict, and only evidence and
inferences that support the jury's finding should be considered. Tex. R. Civ. P. 301; Dodd v. Tex.
Farm Prods. Co., 576 S.W.2d 812, 814-15 (Tex. 1979); CPS Int'l, Inc. v. Harris &
Westmoreland, 784 S.W.2d 538, 541 (Tex. App.-Texarkana 1990, no writ). When there is more
than a scintilla of competent evidence to support the jury's findings, a judgment notwithstanding
the verdict is improper.

 Sheila complains on appeal that the jury's decision regarding the 1998 will was erroneous. 
She contends the only evidence in support of the jury's verdict was Carolyn's testimony. While
Carolyn did testify the 1998 will did not look like her husband's handwriting, she also testified
that her husband was constantly fighting with Sheila over their mother's estate and that Larry was
very distrustful of her. Further, Carolyn introduced evidence the 1998 will was not produced or
seen by anyone until it turned up in the attorney's office after Larry's death. (1) Carolyn elicited
testimony from Sheila that she had misspelled the word "personal" as "personel", which was
similar to the incorrect spelling on the envelope containing the 1998 will. The 1998 will was
purportedly written on March 7, 1998, but Carolyn introduced a letter written to her from Larry
on March 6 that professed his love for her and his intention to see her later that week. 
Additionally, there was testimony from one of Sheila's own witnesses that the signature on the
1998 will might not have been Larry's. 

 In our review, we must employ appropriate deference to avoid substituting our judgment
for that of the fact-finder, and any evaluation should not substantially intrude on the fact-finder's
role as the sole judge of the weight and credibility given to witness testimony. Jones v. State,
944 S.W.2d 642, 648 (Tex. Crim. App. 1996). In light of the foregoing evidence in favor of the
verdict, there is more than a scintilla of evidence to support the jury's findings; therefore, the trial
court did not err by denying Sheila's motion.

B. Was the evidence factually insufficient to support the verdict? 

 When considering a factual sufficiency challenge to a jury's verdict, courts of appeals
must consider and weigh all of the evidence, not just that evidence which supports the verdict. 
Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998). A court of appeals may set
aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the
verdict is clearly wrong and unjust. Id.; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). The
court of appeals is not a fact-finder. Accordingly, the court of appeals may not pass on the
witnesses' credibility or substitute its judgment for that of the jury, even if the evidence would
clearly support a different result. Maritime, 971 S.W.2d at 407. If we find the evidence
insufficient, we must clearly state why the jury's finding is factually insufficient or is so against
the great weight and preponderance of the evidence as to be manifestly unjust. Pool v. Ford
Motor Co., 715 S.W.2d 629, 635 (Tex. 1986), rev'd on other grounds, Crown Life Ins. Co. v.
Casteel, 22 SW.3d 378 (Tex. 2000).

 In contrast to the evidence set forth above in support of the verdict, Sheila presented
testimony from five witnesses stating the 1998 will was entirely in Larry's handwriting. For
example, Larry's ex-wife, Rose, testified the 1998 will was entirely in Larry's handwriting.
However, on cross-examination, Rose admitted she had not seen Larry's handwriting in the
twenty years preceding the trial. Further, Barry Don Henson testified he thought the body of the
will was in Larry's handwriting, but was not positive about the signature. Henson also testified
that some of the exemplars of Larry's handwriting produced by Sheila were not accurate
depictions of Larry's handwriting. 

 When viewing the evidence in a neutral light, Sheila has failed to show the verdict is
against the great weight and preponderance of the evidence. Cain, 709 S.W.2d at 176. In light
of the foregoing and the deference afforded the trier of fact in judging the credibility of the
witnesses, there is certainly some doubt as to the origin of the 1998 will. Accordingly, the
evidence was factually sufficient to support the judgment. 

C. Did the trial court commit reversible error by admitting evidence of Larry and Carolyn's attempted reconciliation? 

 The admission or exclusion of evidence is a matter within the discretion of the trial court. 
City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995). To reverse a judgment based
on error in the admission or exclusion of evidence, an appellant must show that the error
probably caused the rendition of an improper verdict or that it prevented the appellant from
properly presenting the case to the court of appeals. Tex. R. App. P. 44.1(a); McCraw v. Maris,
828 S.W.2d 756, 757 (Tex. 1992). In making this determination, we must review the entire
record.

 According to the Texas Rules of Evidence, evidence is relevant if it has a tendency "to
make the existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence." Tex. R. Evid. 401. The test
for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court's action, rather, it is whether the trial court acted without
reference to any guilding rules or principles; and the mere fact that a trial court may decide a
matter within its discretionary authority different than an appellate judge does not demonstrate
such an abuse. Downer v. Aquamarine Op., 701 S.W.2d 238 (Tex. 1985). In the present case,
the court heard the following exchange: 

 [Counsel]: All right. Now did that ever - divorce action ever come to a
conclusion?


 [Carolyn]: No, it did not. 


 [Counsel]: Okay. And what was the reason for that? 


 [Carolyn]: Well, Larry died before the divorce was final. But we were trying to reconcile. 


 [Appellant's Counsel]: Your Honor, may I object, and may we approach at this
time?


Sheila argued the evidence was inadmissible because events that took place after the 1998 will
was drafted were irrelevant. On the other hand, Carolyn contended that the validity of the 1998
will was dependent on the totality of the circumstances. The court overruled the objection and
admitted the testimony. 

 On appeal, Sheila contends the admission of this evidence was reversible error because
the jury could have believed Carolyn's testimony and determined that it would be inequitable to
award Larry's property to Sheila if Carolyn and Larry were attempting to reconcile. However, the
origin of the 1998 will was an issue, and Carolyn's testimony would have been relevant to the
jury in determining whether Larry intended to change his will. Sheila has failed to show that the
trial court acted outside the scope of its discretion or that it acted without regard to any guiding
principles in making his determination. Downer, 701 S.W.2d at 241-42. As a result, the trial
court did not commit error by admitting the testimony.

IV. 

Conclusion

 Based on the foregoing, we affirm the trial court's judgment. 


 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 6, 2002

Date Decided: November 1, 2002


Do Not Publish
1. Allegedly, Larry instructed a friend that, in the event of his death, Carolyn was to retrieve
certain documents from his home, including the alleged 1998 will, and deliver them to his sister and
the attorney. 



cent 4"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00220-CR

                                                ______________________________

 

 

                                      PERRY JUDKINS,
JR., Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                            On Appeal from the County Court at Law

                                                             Fannin County, Texas

                                                            Trial
Court No. 44918

 

                                                                   
                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Responding
to a report of a fight in progress at the Ladonia Housing Authority apartments
(LHA) in Ladonia, Texas, officers of the Fannin County Sheriffs Office, Texas
Department of Public Safety (DPS), and the Fannin County Special React Team (SWAT
team), encountered about seventy people [a]mongst the housing authority and on
the grounds.  The officers secured the
entire area and, based upon statements that they [had] a knife or something to
that effect, the officers [were] positioned to start conducting searches.[1]  Trooper Kevin Sanman of the DPS detained and
patted down three or four people, including Perry Judkins, Jr., who were
standing in a little group beside one of the apartments.  When searching Judkins, Sanman felt something
he thought could be contraband, and he testified that Judkins gave him
permission to search.  Sanman discovered
a baggie of marihuana in Judkins pocket and arrested him.  

            Judkins
was charged with possession of marihuana in an amount less than two
ounces.  The trial court denied Judkins
motion to suppress the drugs.  Judkins
later pled guilty and was sentenced to deferred adjudication community
supervision for nine months.[2]  

            On
appeal, Judkins argues that the trial court should have suppressed the drugs
because:  (1) the officers did not
have reasonable suspicion to detain and frisk him; and (2) the officers lacked
probable cause, or consent, to search him. 


            We
reverse the judgment of the trial court because the officer lacked reasonable
suspicion to detain Judkins.

I.          Factual and Procedural
Background

            On
or about March 20, 2010, in the late night or early morning hours, Mr. Brown, a
resident at the LHA, called 9-1-1 and reported that a fight, involving a large
group of people and possibly a knife, was occurring on the LHA grounds.  Brown said that he heard whooping and
hollering, fights going on and that he [had overheard] people saying that --
they made the statement that they have a knife or something to that effect.  

            When
the police arrived at the LHA, they saw several groups of people, totaling
about seventy people in all.  Fearing the
situation could get out of control, Sergeant Leonard Baxter called for
assistance because there were only seven officers there at the time, and the
LHA was a high crime area where fights had occurred in the past.  The SWAT team, and Trooper Sanman responded
to the call for assistance. 

            When
Sanman arrived on the scene, [p]eople [were] running all over the place.  A few minutes later, one of the police
officers already on the scene told him to watch and detain a small group of
four men, one of whom was Judkins, who were standing beside one of the LHA
apartments.  Sanman detained the four men
and got identification from them.  He
testified that he patted down Judkins out of fear for his safety, as the
officers were dealing with a large group of people in a high crime area,
responding to reports of a large fight and a possible weapon.  

            When
Sanman patted down Judkins, he felt something in his pocket that felt like it
could be contraband.  Sanman said he
asked for and received Judkins permission to search the inside of his
pocket.  Judkins denied giving Sanman
permission to search him.  

II.        Standard of Review

            We
review the trial courts decision to deny Judkins motion to suppress evidence
by applying a bifurcated standard of review. 
Graves v. State, 307 S.W.3d
483, 489 (Tex. App.Texarkana 2010, pet. refd); Rogers v. State, 291 S.W.3d 148, 151 (Tex. App.Texarkana 2009,
pet. refd).

            Because
the trial court is the exclusive trier of fact and judge of witness credibility
at a suppression hearing, we afford almost total deference to its determination
of facts supported by the record.  State v. Ross, 32 S.W.3d 853, 85657
(Tex. Crim. App. 2000); Carmouche v.
State, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We also afford such deference to a trial
courts ruling on application of law to fact questions, also known as mixed
questions of law and fact, if the resolution of those questions turns on an
evaluation of credibility and demeanor.  Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996).

            While
we defer to the trial court on its determination of historical facts and
credibility, we review de novo its application of the law and determination on questions
not turning on credibility.  Carmouche, 10 S.W.3d at 332; Guzman, 955 S.W.2d at 89; Graves, 307 S.W.3d at 489.  Since all evidence is viewed in the light
most favorable to the trial courts ruling, we are obligated to uphold the
denial of Judkins motion to suppress if it was supported by the record and was
correct under any theory of law applicable to the case.  Carmouche,
10 S.W.3d at 328; State v. Ballard,
987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

III.       Reasonable Suspicion to
Detain

            In
his first point of error, Judkins contends that the trial court should have
suppressed the evidence because the officers lacked reasonable suspicion to
detain and frisk him. 

            The
State does not argue that Judkins was not detained.[3]  Further, the State stipulated that Judkins was
searched and arrested without a warrant. 
An officers warrantless search of a person or persons property is
presumed to be an unreasonable search under the Fourth Amendment unless an
exception excuses the officers conduct.  Minnesota
v. Dickerson, 508 U.S. 366, 372 (1993); Brimage
v. State, 918 S.W.2d 466, 500 (Tex. Crim. App. 1994) (plurality op.) (op.
on rehg); Kelly v. State, 669 S.W.2d
720, 725 (Tex. Crim. App. 1984); Hitchcock
v. State, 118 S.W.3d 844, 848 (Tex. App.Texarkana 2003, pet. refd).  

            An
officer may briefly stop a suspicious individual in order to determine his or
her identity or to maintain the status quo momentarily while obtaining more
information.  Adams v. Williams, 407 U.S. 143, 147 (1972); Terry v. Ohio, 392 U.S. 1, 21 (1968); Gurrola v. State, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994).  In Terry,
the United States Supreme Court established a two-pronged test for such
investigative detentions.  Terry, 392 U.S. at 1920.  To determine the reasonableness of an investigative
detention, the court must inquire:  (1)
whether the officers action was justified at its inception; and, (2) whether
it was reasonably related in scope to the circumstances which justified the
interference in the first place.  Davis v. State, 947 S.W.2d 240, 242
(Tex. Crim. App. 1997).

            Under
the first prong, a police officer may lawfully conduct a temporary detention if
there is reasonable suspicion to believe that the detained person is violating
the law.  Terry, 392 U.S. at 21; Ford v.
State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  Reasonable suspicion exists if the officer
has specific, articulable facts that when combined with rational inferences
from those facts, would lead the officer to reasonably suspect that a
particular person has, or soon will be, engaged in criminal activity.  Brother
v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005); Doyle v. State, 265 S.W.3d 28, 31 (Tex. App.Houston [1st Dist.]
2008, pet. refd) (citing Terry, 392
U.S. at 30).  While the State need not
establish with absolute certainty that a crime has occurred in order to show
reasonable suspicion, these facts must be more than a mere hunch or
suspicion.  Garcia v. State, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001); Davis, 947 S.W.2d at 244.  The determination of reasonable suspicion is
factual and must be examined in terms of the totality of the circumstances at
the time of the stop.  Curtis v. State, 238 S.W.3d 376, 380
(Tex. Crim. App. 2007); Woods v. State,
956 S.W.2d 33, 38 (Tex. Crim. App. 1997). 


            The
States contention, urged at the suppression hearing and on appeal, is that
Judkins was detained because he was present in a high crime area where a 9-1-1
caller reported seeing a large fight, possibly involving a weapon, and there
were a limited number of officers available to secure the scene.  

            In
this case, Browns 9-1-1 call was reasonably reliable because he was present at
the LHA and he identified himself, placing himself in a position to be easily
found, identified, and held responsible for the information he provided.  Hawes
v. State, 125 S.W.3d 535, 540 (Tex. App.Houston [1st Dist.] 2002, no
pet.).  However, Brown did not report
personally seeing the fight or a weapon, and all he could articulate was that
he suspected there might be a fight and that he overheard a statement that
there was a knife.  Brown did not
describe any particular suspect that was involved in the fight.  

            Judkins
testified that on the night in question, he was at the LHA attending a big
party for his sisters birthday and that there was some females fighting at
the party.  No evidence suggested that
Judkins engaged in any behavior that raised any suspicion of his involvement
with criminal activity.  There is no
evidence that Judkins was involved in the fight, that he possessed a weapon at
any time, or that any weapon was found. 
Likewise, there is no evidence that Judkins exhibited nervous,
suspicious, or evasive behavior, such as furtive gestures or unprovoked flight
upon noticing the arrival of police.  Illinois v. Wardlow, 528 U.S. 119, 124
(2000).  Judkins presence in an area of
expected criminal activity, standing alone, is not enough to support a
reasonable, particularized suspicion that he was associated with criminal
activity.[4]  Wardlow,
528 U.S. at 124.  By the time of the
pat-down, certainly, there had been a detention, but when considering the
totality of the circumstances, there had been identified no articulable fact
supporting any reasonable suspicion that Judkins or his immediate group was
engaged in any criminal activity. 
Accordingly, we sustain Judkins first point of error and find the trial
court abused its discretion in denying the motion to suppress.  Since we have decided that no reasonable
suspicion existed to detain Judkins and no other justification for thereafter
searching him having been alleged, the search was improper and the fruits
thereof should have been suppressed. 
Since the basis for the conviction was the marihuana found as a result
of the improper search of Judkins, the error was harmful.  

            We
reverse the judgment and remand to the trial court for further proceedings. 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          April
13, 2011

Date Decided:             April
19, 2011

 

Do Not Publish 











[1]The
females were not searched. 

 





[2]Judkins
was also fined $350.00, ordered to pay restitution of $140.00 and ordered to
pay court costs.  





[3]Sanman
commanded Judkins and the others with him to turn around and place their hands
on the wall and dont move.  He then
gathered identification and continued to detain the group.  They remained in the same position during the
detention, which lasted approximately ten to fifteen minutes.  





[4]Sanman
did not respond positively when he was asked if Judkins took off running.