Clayton W. WILLIAMS, Jr., Inc. &
Odis E. Graham, Appellants,

v.

David & Rosielinda OLIVO, Appellees.

No. 04–93–00549–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 16, 1995.

Alex Huddleston, Andrew L. Kerr, Zachary B. Aoki, Groce, Locke & Hebdon, San Antonio, Scott Patrick Stolley, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, K. Blake Coffee, Law Offices of K. Blake Coffee, San Antonio, for Appellant.

W.R. Hitchens, Sam R. Fugate, Kingsville, Carlos Villarreal, Hunt, Hermansen, McKibben & English, L.L.P., Corpus Christi, for Appellee.

Before CHAPA, C.J., and RICKHOFF, LÓPEZ, STONE, HARDBERGER, GREEN [1] and DUNCAN, JJ.

ON APPELLEES' MOTION FOR RE-HEARING EN BANC AND APPEL-LANT CLAYTON W. WILLIAMS, JR., INC.'S MOTION FOR REHEARING

CHAPA, Chief Justice.

Appellees' motion for rehearing en banc is granted. This renders moot appellees' motion for rehearing addressed to the original panel. Appellant Clayton W. Williams, Jr., Inc's motion for rehearing was considered en banc on the court's own motion; that motion for rehearing is also granted. The previous opinions and judgment dated November 8, 1995, are withdrawn and the following opinions and judgment are substituted therefor.

Appellants, Clayton W. Williams, Jr., Incorporated, and Odis E. Graham, contest a judgment rendered in favor of appellees, David Olivo and Rosielinda Olivo. Appellees' cause of action is based on a personal injury David Olivo suffered after falling from a drilling rig.

The dispositive issues before this court are:

(1) whether appellees' cause of action was submitted to the jury on the correct theory of liability;

(2) whether sufficient evidence exists to support a finding of legal duty;

(3) whether the court abused its discretion in failing to submit requested instructions regarding legal duty;

(4) whether sufficient evidence exists to support a finding of negligence and gross negligence;

(5) whether sufficient evidence exists to support a finding of past medical expenses; and

(6) whether an employer-employee relationship exists between the two appellants.

For the reasons stated, we affirm in part and reverse and render in part.

**FACTS**

Clayton W. Williams, Jr., Incorporated (Williams), operated an oil and gas lease in LaSalle County. The company contracted with Diamond M Onshore (Diamond M) to drill an oil well at a particular rig on the lease in LaSalle County. On December 5, 1991, Diamond M sent its employee, David Olivo, to work on the rig. Olivo mounted a pipe rack to move several joints of pipe onto a catwalk, where the pipe would be transported to the rig floor. After he moved several pipes, he suddenly slipped as he stepped off the rack. His back momentarily struck the pipe rack as he fell, and he then landed on his back on a drill pipe thread protector lying on the ground. A thread protector is a cap that screws onto the end of a drill pipe to protect its threads before it is moved to a rig. Olivo said he noticed four or five other thread protectors lying on the ground in the area. The injury to his back partially paralyzed him and he walks only with great difficulty.

Olivo filed suit against Graham and Williams for negligence and gross negligence. Olivo alleged that the drilling rig was under the control and supervision of Odis Graham, who worked for Williams and was sent to act as its representative at the rig site. Olivo and his wife, Rosielinda Olivo, asserted that appellants failed to maintain the work place in a safe condition, failed to inspect for and correct dangerous conditions, failed to warn of dangerous conditions, failed to provide safety devices, and failed to supervise the work properly. They claimed past and future damages for physical injury, physical disfigurement, physical impairment, mental anguish, medical expenses, loss of income, loss of household services, and loss of consortium.

After the evidence was presented, the jury made the following findings: that Odis Graham's negligence and gross negligence proximately caused the accident, that Graham was an employee of Williams and was acting within the scope of his employment at the time of the accident, and that Olivo was not Williams's borrowed employee.

1. Justice Paul W. Green recuses himself and does not participate in this en banc opinion.

Based upon the jury's verdict, the court found Graham and Williams jointly and severally liable for appellees' damages. It awarded appellees $2,028,354 in actual damages plus $21,800 in exemplary damages from Odis Graham and $500,000 from Clayton W. Williams, Jr., Incorporated.

In this appeal, Graham and Williams have filed separate briefs, each containing various points of error. To condense our discussion, we will address appellants' points of error together whenever they are similar.

## APPELLEES' THEORY OF LIABILITY

■ In his first point of error, Odis Graham argues that the judgment cannot be supported on a simple negligence theory of liability because this case actually involves an injury resulting from a "condition created by the drilling and not by the activity of the drilling itself."

■ In a premises liability case, recovery may be based on two possible theories. First, an injury may arise from a condition of a premises. *See Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992); *see also Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex. 1985). Second, an injury may stem from a negligent activity on a premises. *Id.* Any case involving recovery under the premises defect theory must submit four elements underlying the cause of action to the jury as set forth in *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983).[2]

Graham contends that because this case involves a defective condition on a premises, it was necessary for appellees to submit the four elements of *Corbin* to the jury, which they failed to do, thus waiving the cause of action.

■ A trial court has wide discretion in submitting the jury charge. *See* TEX. R.CIV.P. 277. "This discretion is subject to the requirement that the questions submitted must control the disposition of the case, be raised by the pleadings and evidence, and properly submit the disputed issues for the jury's deliberation." *Texas Dep't of Transp. v. Ramming,* 861 S.W.2d 460, 463 (Tex. App.—Houston [14th Dist.] 1993, writ denied).

■ Recovery on a negligent activity theory requires that a person be injured by and as a contemporaneous result of the activity itself, rather than the condition created by the activity. *Keetch,* 845 S.W.2d at 264. The record reflects that appellees pleaded and requested jury questions on both the on-premises negligent activity theory and the premises-condition theory of liability.[3] Contrary to appellees' assertions on appeal, the record shows that only a general negligence question was submitted to the jury.

Appellees contend that the injury occurred after Olivo fell and hit a thread protector. Thread protectors, which were described as cup-like objects screwed onto pipes to protect their threads from damage while they are transported to the rig, were used by Diamond M during the drilling of the rig in this case. Typically, the floor hand bears the responsibility of screwing the protectors onto the pipes before they are hoisted up to the ramp. After the pipes arrive on the rig

**2.** The elements are: (1) that the owner/operator had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm; (3) that the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner/operator's failure to use such care proximately caused the plaintiff's injuries. *Keetch,* 845 S.W.2d at 264. Under *Keetch,* it is permissible to submit the various elements using a broad form premises liability question accompanied by an instruction encompassing the four *Corbin* elements. *Id.* at 266.

**3.** Olivo's first amended petition reflects that his injuries were proximately caused by the following acts or omissions of appellants:

–failure to provide a safe work place;
–failure to provide adequate safety devices;
–failure to properly supervise the work site and ensure drilling work proceeded in a safe manner;
–failure to inspect the work premises for dangerous conditions;
–failure to warn Olivo of dangerous conditions on the premises;
–failure to correct dangerous conditions that appellants knew or should have known existed on the premises; and
–failure to store the thread protectors properly.

floor, the drilling crew removes the protectors, which are kept at the rig site until needed again. Sometimes they are stacked underneath the pipe rack or placed on the ground. It is obvious that the thread protector in question was simply lying on the ground and not being used by any of Diamond M's personnel when Olivo injured himself. When Olivo had come on duty that morning, he immediately got on the pipe rack and moved several pipes onto the catwalk so that they could be attached to a cable and hoisted onto a ramp to carry them to the rig floor. After he moved several pipes, he suddenly slipped off the pipe rack and fell to the ground several feet below, landing on a thread protector. Olivo said that several thread protectors were scattered about on the ground under the pipe rack.

Although the distinction between a defective premises condition and an on-site negligent activity may appear slight in some cases, the supreme court has announced that a line of demarcation exists between the two. In *Keetch*, the court held, "At some point, almost every artificial condition can be said to have been created by an activity. We decline to eliminate all distinction between premises conditions and negligent activities." *Keetch*, 845 S.W.2d at 264. Numerous courts in this state have recognized the distinction between the two theories of recovery and have noted that a cause of action based on a defective premises condition alone must be submitted to the jury with the elements set forth in *Corbin*. *See, e.g., H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992); *Stanley Stores, Inc. v. Veazey*, 838 S.W.2d 884, 886 (Tex.App.—Beaumont 1992, writ denied); *Physicians & Surgeons Gen. Hosp. v. Koblizek*, 752 S.W.2d 657, 660 (Tex. App.—Corpus Christi 1988, writ denied); *see also Folks v. Kirby Forest Indus., Inc.*, 10 F.3d 1173, 1177 (5th Cir.1994).

▆ Appellees contend that because thread protectors were subject to being reused as part of the ongoing drilling activity, the situation in this case is distinguishable from those cases involving solely a defective condition. We reiterate that an on-premises negligent activity case involves an injury that contemporaneously results from an activity

rather than a condition created by the activity. *Keetch*, 845 S.W.2d at 264. Here, it does not matter that the drilling continued after the thread protectors were scattered on the ground. *See H.E. Butt Grocery Co.*, 845 S.W.2d at 259; *Stanley Stores, Inc.*, 838 S.W.2d at 886 (certain activities apparently continued after causing the hazardous conditions). Therefore, liability in this case primarily rests on the theory that thread protectors were tossed on the ground, thereby creating an allegedly hazardous condition. Thus, it was necessary for the court's charge to submit the *Corbin* elements to the jury.

▆ If no element of an independent cause of action is included in the charge without request or objection, the cause of action is waived. TEX.R.CIV.P. 279. To complain about the court's failure to submit a question necessary for a theory of recovery, one must request the issue by tendering it in substantially correct wording to the trial court. *See* TEX.R.CIV.P. 278; *Washington v. Reliable Life Ins. Co.*, 581 S.W.2d 153, 156 (Tex.1979). Furthermore, to preserve error regarding the court's failure to submit the issue, a ruling must be made on the request. *Wright Way Constr. Co. v. Harlingen Mall Co.*, 799 S.W.2d 415, 419 (Tex.App.—Corpus Christi 1990, writ denied); *Birdville Indep. Sch. Dist. v. First Baptist Church*, 788 S.W.2d 26, 30 (Tex.App.—Fort Worth 1988, writ denied). The record in this case fails to show that a ruling on a requested issue was made, nor does it show that a requested instruction listing the *Corbin* elements was even offered. *See supra* note 2. Hence, appellees cannot complain that the court refused to submit their tendered issue.

However, appellees insist that the submission of a broad-form negligence question alone is sufficient in a case such as this, or that the broad-form question incorporated elements of a premises condition cause of action and that other elements not submitted to the jury may be deemed found by the court. Appellees' first argument is without merit. As pointed out above, the supreme court has firmly explained in *Corbin* that four specific elements must be submitted to the jury to have a finding of premises condition liability.

We further decline to accept appellees' second argument. Under Texas Rule of Civil Procedure 279, omitted elements of a ground of recovery may be deemed found by the trial court if at least one element of a cause of action is submitted to the jury and is "necessarily referable" to that cause of action. The "necessarily referable" requirement is designed to give parties fair notice of, and an opportunity to object to, a partial submission. *Superior Trucks, Inc. v. Allen,* 664 S.W.2d 136, 144 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). If the elements are not necessarily referable to the ground of recovery or defense urged by the appellant, then that ground is waived. *See Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 495 (Tex.1991); *J & C Drilling Co. v. Salaiz,* 866 S.W.2d 632, 636 (Tex.App.—San Antonio 1993, no writ); *Kittyhawk Landing Apartments III v. Anglin Constr. Co.,* 737 S.W.2d 90, 93 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Malone v. Carl Kisabeth Co.,* 726 S.W.2d 188, 190–91 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.). In the present case, the jury was asked, "Did the negligence, if any, of those named below proximately cause the occurrence in question?" Although these elements overlap with some of the elements required in a premises condition liability case, they are also all of the necessary elements to support a simple negligence finding. Therefore, the elements are not necessarily referable to either cause of action.

Thus, the negligence and proximate cause elements in this jury question are not necessarily referable to a cause of action based on a premises condition, which the supreme court has said differs from a simple negligence cause of action. Appellants were not given fair notice that the submitted issue covered the premises condition ground of recovery in addition to the negligent activity claim. Hence, the premises condition theory was entirely omitted from the charge and Graham was under no duty to object. *Ramos v. Frito-Lay, Inc.,* 784 S.W.2d 667, 668 (Tex.1990). Since no jury finding was made on the premises condition theory of liability and the cause of action was waived, we sustain Graham's first point of error.

However, we decline to reverse and render the entire judgment as requested by Graham. We note that appellees pleaded, as acknowledged by Graham in his brief, that Olivo's injury also stemmed from the negligence of Graham and Williams. Appellees specifically alleged that Graham and Williams failed to provide a safe workplace, failed to provide safety devices, and failed to supervise the work site properly. Because an affirmative jury finding was obtained on the alternative simple negligence theory of recovery, we proceed to address the points of error as they relate to this cause of action.

## DUTY OF CARE

### a. Existence of a Duty of Care

In point three, Graham argues that the court erred in failing to rule as a matter of law that he owed no duty to David Olivo. In point four, Graham contends the evidence is legally and factually insufficient to support a finding that he controlled Diamond M's work. In its first point, Williams argues that it owed no legal duty to Olivo under the facts of this case.

Appellants contend that they owed no duty to Olivo because he worked directly for Diamond M and not for Clayton W. Williams, Jr., Inc. Williams was the occupier of the premises in issue for the purpose of operating an oil and gas lease, and hired Diamond M as an independent contractor to drill the well. However, Williams retained some control over the drilling operations. Appellants also claim that they owed no duty to Olivo because they did not retain control over the operative details of the work performed by Diamond M. Further, it is uncontradicted that Graham was acting as Williams's agent during this entire process.

The threshold inquiry in a negligence case is whether a legal duty exists. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). If no duty exists as a matter of law, or if the evidence is insufficient to support an implied finding of duty, then the cause of action based on negligence cannot be sustained.

When an independent contractor works at a particular site and is in complete control of the premises, it is charged with the same duty as an owner or occupier of the premises. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex.1985); *Robert E. McKee, Gen. Contractor, Inc. v. Patterson,* 153 Tex. 517, 271 S.W.2d 391, 393 (1954). As a general rule, the owner or occupier of a premises does not have a duty to see that an independent contractor performs its work in a safe manner. *Redinger,* 689 S.W.2d at 418. If an individual is injured while performing the contractor's work under these circumstances, the independent contractor is liable, not the owner or occupier of the premises. *Abalos v. Oil Dev. Co. of Texas,* 544 S.W.2d 627, 631 (Tex.1976).

However, citing excerpts of Section 414 of the *Restatement (Second) of Torts* in *Redinger,* the Texas Supreme Court recognized an exception to this rule:

> However, when the general contractor exercises *some control* over a subcontractor's work he may be liable unless he exercises reasonable care in supervising the subcontractor's activity. We adopt the rule enunciated in the Restatement (Second) of Torts:
>
> > One who entrusts work to an independent contractor, but who *retains the control of any part of the work,* is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.
>
> Restatement (Second) of Torts § 414 (1977).
>
> Several other states follow the Restatement of Torts.
>
> This rule applies when the employer retains *some control* over the manner in which the independent contractor's work is performed, but does not retain the degree of control which would subject him to liability as a master. Restatement (Second) of Torts § 414, comment a (1965). The employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports. *Id.,* comment c (1965).

> He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a *supervisory control* may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.
>
> *Id.,* comment a (1965).

*Redinger,* 689 S.W.2d at 418 (emphasis added) (some citations omitted).

The full text of the pertinent comments to Section 414 of the *Restatement (Second) of Torts* provides:

> a. If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a *control less than* that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such supervisory control may not subject him to liability under the principles of Agency, *but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.*
>
> b. The rule stated in this Section is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability *if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care*

*should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself.* So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition, and fails to exercise reasonable care either to remedy it himself or by the exercise of his control cause the subcontractor to do so.

c. In order for the rule stated in this Section to apply, the employer must have retained at least *some degree of control* over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations *which need not necessarily be followed,* or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Restatement (Second) of Torts* § 414, cmts. a, b, c (1965) (emphasis added).

In *Pollard v. Missouri P.R.R.,* 759 S.W.2d 670 (Tex.1988), the court stated that "if a right of control over the work has a contractual basis, the fact that no actual control was exercised will not absolve a premises owner [general contractor] of liability. *It is the right of control, and not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner.*" *Id.* at 671 (citing *Newspapers Inc. v. Love,* 380 S.W.2d 582 (Tex.1964)) (emphasis added). In *Tovar v. Amarillo Oil Co.,* 692 S.W.2d 469 (Tex.1985), the contractor had the right under a drilling contract with the subcontractor "to take possession of the well and discontinue drilling in the event of carelessness, inattention, or incompetency on the part of the [subcontractor]." *Id.* at 470. As a result of the subcontractor's improper use of a kill line for a fill

line, one of its employees was injured. The supreme court found the contractor owed a duty to the injured employee of the subcontractor and upheld a jury finding of negligence against the contractor for failing to exercise the right to shut down the drilling rig and prevent the resulting injuries to an employee of the subcontractor. *Id.*

 Similarly, in this case, because Williams and Graham retained some right to control and supervise the subcontractor's work, a duty of care existed towards Olivo under Section 414. *See id.; see also Exxon Corp. v. Quinn,* 726 S.W.2d 17, 20 (Tex.1987). Therefore, negligence could arise if Williams and Graham failed to use ordinary care in the exercise of, or failed to exercise, control or supervision over the subcontractor. *Barham v. Turner Constr. Co. of Tex.,* 803 S.W.2d 731, 736 (Tex.App.—Dallas 1990, writ denied); *see Pollard,* 759 S.W.2d at 671; *Tovar,* 692 S.W.2d at 470. Generally, a court decides whether a duty existed under certain circumstances as a question of law. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). When facts are disputed about control, however, the issue is one of fact for the trier of fact. *Id.* at 526; *see Exxon Corp.,* 726 S.W.2d at 20.

 The record reflects that neither party objected to the court's failure to submit an issue on control in the charge to the jury. When some, but not all, elements necessary to sustain a ground of recovery are given and answered by the jury without objection or request, the trial court may make written findings on omitted issues raised by the evidence. TEX.R.CIV.P. 279. If no written findings are made, the omitted issues, such as duty of care, are deemed found by the trial court in such manner as to support the judgment. *See* TEX.R.CIV.P. 279; *Gulf State Utils. Co. v. Dryden,* 735 S.W.2d 263, 266 (Tex.App.—Beaumont 1987, no writ); *Phelan v. Lopez,* 701 S.W.2d 327, 331 (Tex.App.—Beaumont 1986, no writ). In this case, a deemed finding was made as to appellants' right of sufficient control and supervision over the work involved, hence giving rise to a duty of care towards Olivo.

Graham insists that he owed no duty to Olivo as a matter of law, but we have seen that a duty exists when a contractor and its agents possess the right to exercise sufficient control or supervision over the work of the subcontractor. *See, e.g., Pollard,* 759 S.W.2d at 671; *Tovar,* 692 S.W.2d at 470; *Redinger,* 689 S.W.2d at 418; *Lawson–Avila Constr., Inc. v. Stoutamire,* 791 S.W.2d 584, 591 (Tex.App.—San Antonio 1990, writ denied). Graham additionally argues that he owed no duty as a matter of law under Section 414 because he did not "entrust" work to Diamond M directly, as this was done contractually by Williams.

We do not find it necessary for Graham to "entrust" or "employ" the independent contractor to be held liable under the principle of law described under Section 414. *See Restatement (Second) of Torts* § 414 (1965). The evidence is clear that Graham worked on behalf of Williams. An agent is liable for his own torts. *Light v. Wilson,* 663 S.W.2d 813, 815 (Tex.1983) (Spears, J., concurring). Moreover, an agent may be liable for his torts even if he acts on command of the principal. *Restatement (Second) of Agency* § 343 (1958). An agent may also be liable for his failure to perform the duties of a principal to third persons. *Id.* § 343 cmt. f. An agent may further be liable if negligent in not fulfilling a duty to protect others. *Id.* §§ 353–54. Consequently, Graham owed a duty to Diamond M and its employees, even though he was acting on Williams's behalf. In conclusion, we hold that both Williams and Graham owed a duty of care to Olivo.

### b. Sufficiency of the evidence

Appellants contend that the evidence is legally or factually insufficient to support the jury's answer to the liability issue in the case. Implied findings of fact, like a trial court's findings, may be challenged by legal and factual sufficiency points. *See Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989); *Giangrosso v. Crosley,* 840 S.W.2d 765, 769 (Tex.App.—Houston [1st Dist.] 1992, no writ). The standard of review of the sufficiency of the evidence to support an implied finding is the same as that applied to review a jury's finding or a trial court's finding of fact. *Celanese Chem. Co. v. Burleson,* 821 S.W.2d 257, 260 (Tex.App.—Houston [1st Dist.] 1991, no writ).

In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). If there is more than a scintilla of evidence to support the finding, the no evidence challenge must fail. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). In considering a factual sufficiency point, we may not substitute our judgment for that of the trier of fact, but must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Under this analysis, we are not the fact finders and we do not pass upon the credibility of witnesses or substitute our judgment for that of the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

Because our inquiry is limited to appellees' simple negligence claim, we must examine whether sufficient evidence was presented at trial to show that appellants' right of control extended to providing a safe work place, safety devices, or supervision of the work and the site. Right of control can be established two ways: by contract or by course of dealing. *See Pena v. TXO Prod. Corp.,* 828 S.W.2d 188, 191 (Tex.App.—Corpus Christi 1992, no writ). As to the drilling contract between Williams, Jr., Incorporated, and Diamond M Onshore, appellees maintain that they demonstrated Williams's right of control by the following evidence:

(1) The contract was a daywork contract, which means that Diamond M was paid by the day, and not by the footage drilled. Ap-

pellees argue that because Diamond M had no incentive to drill quickly, such a contract encouraged Williams to put pressure on Diamond M to speed up its drilling. Also, they argue that a daywork contract encouraged Williams to monitor the drilling more closely to ensure that the drilling progressed quickly.

(2) The drilling contract required Williams to provide certain tools and equipment to Diamond M for the drilling of the rig and required Williams to control specific aspects of the drilling operation (e.g., drilling fluid program, deviation surveys, wire line surveys, etc). Appellees claim this indicated extensive control over the entire drilling process.

(3) The drilling contract allowed for Williams to conduct drug testing of Diamond M's employees. Hence, appellees argue, this indicated that Williams had control over safety.

(4) The drilling contract specifically provided that in the case of

carelessness [inferring safety control], inattention, or incompetency on the part of [Diamond M] in performance of the work, [Williams] shall notify [Diamond M] of its dissatisfaction. [Diamond M] shall be afforded a reasonable period of time to correct or remedy the matters complained of. Should [Diamond M], within the time afforded by [Williams], fail to correct or remedy the matters complained of to [Williams's] satisfaction, [Williams] shall have the right to take possession of the well, discontinue the drilling thereof, or abandon same. If [Williams] so selects, it may take possession of the well and any or all of [Diamond M's] tools, machinery, and equipment at the well site and, through its own employees or some other contractor, drill such well to completion.

Concerning course of dealing, appellees introduced an expert witness who testified that based on his review of the evidence, it appeared that Graham pressured Diamond M to perform its drilling work quickly. Appellees suggest this evidence justified the jury's believing that the pressure exerted upon Diamond M to work faster than normal not only established control and supervision by appellants, but also increased the risk of accidents to Diamond M's workers.

Appellees additionally claim that Graham required Diamond M to use drill-pipe thread protectors as further evidence of control and supervision. As additional evidence of control, they also rely on Graham's statement that if he saw drill-pipe thread protectors lying around, he would have probably asked Diamond M's workers to pick them up because he did not like equipment cluttering the work site. Moreover, Olivo testified that Graham asked him to stack casing protectors off to the side of the work site so that they could be picked up by the casing company and that Olivo, under the impression that Graham could control the details of his work, complied with the order. Olivo also testified that he was instructed by Graham on the day immediately preceding the injury to pick up the thread protectors in the drilling area. Finally, appellees rely on the testimony of Williams's former operations manager, who testified that it was his opinion that a drilling consultant like Graham was responsible for assuring that work was performed in a safe and workmanlike manner and that Graham probably could tell Diamond M's workers to do specific things to ensure their safety if he noticed something was wrong.

Based on a review of the totality of the record, the conclusion is inescapable that appellees met their burden of presenting sufficient evidence to support the deemed finding that the right to control and supervise retained by Williams and Graham extended to providing a safe work place, safety devices, and supervision of the work and the site. Paragraph 6.1 of the drilling contract between Williams and Diamond M allowed Williams to take over control of the contract "[i]n the event of unreasonably slow progress, carelessness, inattention, or incompetency on the part of Contractor in performance of the work. . . ." Clearly, the provision involving "carelessness" could have no interpretation that did not somehow include the safety of the operation in general. Under this contract, every request by Williams and Graham essentially amounted to a command, and the testimony reflected that their requests in fact were received as commands.

If their requests were not followed through, then Williams could deem performance of the work unsatisfactory, careless, unsafe, or incompetent and take "possession of the well, discontinue the drilling thereof, or abandon same."

Viewing the evidence in favor of the jury's verdict, as we must, there is sufficient evidence to support its liability findings as well as the deemed findings. *See Stafford,* 726 S.W.2d at 16. Moreover, assessing all the evidence adduced at trial, it cannot be said that the jury's verdict is manifestly unjust or against the great weight and preponderance of the evidence. *See Pool,* 715 S.W.2d at 635. The sufficiency of evidence points are denied.

█ On the subject of duty, Williams also raises a point of error contending that the court should have submitted its requested definition and instructions regarding the duty of an owner or occupier of land to an independent contractor. Without such instructions, Williams argues, the jury was free to make a finding of negligence without regard as to whether Williams breached a duty to Olivo.

█ The trial court has considerable discretion in determining what constitutes necessary and proper issues. *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 256 (Tex.1974); *see Scott v. Ingle Bros. Pac., Inc.,* 489 S.W.2d 554, 557 (Tex.1972). The test for abuse of discretion is whether the trial court's action in refusing to submit the requested definition and instruction was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986).

█ Under Texas Rule of Civil Procedure 277, broad-form questions are the preferred method of submitting an issue to the jury. It is not an abuse of discretion to submit a broad-form issue without instructions that are susceptible to an objection as a comment on the weight of the evidence. *Lawson–Avila Constr., Inc.,* 791 S.W.2d at 592. Indeed, the instructions submitted by Williams are susceptible to such an objection since they stated that an owner or occupier of a premises owes no duty to supervise the work of the independent contractor and no duty to see that an independent contractor performs its work in a safe manner. Because no abuse of discretion has been shown, the point is denied.

## BREACH OF DUTY AND PROXIMATE CAUSE

Having established that the court's deemed finding of control is supported by sufficient evidence to give rise to a duty of care, we turn to the points of error regarding negligence generally.

█ First, appellants challenge the sufficiency of the evidence regarding breach of duty and proximate cause. Graham argues that there is no evidence showing that Graham was negligent in failing to supervise Diamond M's employees. Nothing, he contends, indicates he should have acted differently under the circumstances of this case. *See Colvin v. Red Steel Co.,* 682 S.W.2d 243, 245 (Tex.1984). However, as we stated above, the evidence reveals that Graham was concerned about the scattering of miscellaneous equipment around the rig. On one occasion, he even asked Olivo to stack casing thread protectors. Also, the jury could have believed that Graham exerted or had the right to exert significant control over the drilling process of the rig. Williams specifically delineated in its contract that it retained the right to test Diamond M's employees for substance abuse. Hence, Williams took a step toward monitoring the safe operation of the drilling, yet the evidence further shows that Williams did not organize safety meetings that allegedly could have prevented the accident at hand. It is beside the point that Graham was asleep in his trailer at the time of the accident, nor does it matter that Graham was unaware that drill pipe thread protectors were located under the catwalk immediately before Olivo fell. It was or should have been foreseeable that any equipment, such as drill pipe thread protectors, might clutter the ground around the work site and create a hazard. *See Rohan v. Baker,* 470 S.W.2d 238, 241 (Tex.Civ.App.— Houston [1st Dist.] 1971, writ ref'd n.r.e.) (duty extends to preventing dangers that might reasonably be anticipated to exist).

Because there is no evidence that Graham gave instructions to Diamond M's employees to avoid such a hazard, the jury could have believed that Graham, generally aware of the hazard of tossing equipment on the ground, was negligent in not ensuring that this problem did not arise again.

■ In addition, appellants' complaints regarding proximate cause are without merit. They contend that because Olivo freely admitted he slipped and fell because he was careless, appellants could not have caused his injury. However, appellees did not bring suit because appellants were negligent in causing his fall. The "occurrence in question" upon which appellees sued was the placement of thread protectors on the ground and the failure to prevent the improper placement of such equipment on the ground. Viewing the evidence in favor of the jury's verdict, we conclude there is sufficient evidence to support its findings. *Stafford,* 726 S.W.2d at 16. Moreover, assessing all the evidence adduced at trial, we cannot say the jury's verdict is manifestly unjust or against the great weight and preponderance of the evidence. *See Pool,* 715 S.W.2d at 635. The points are denied.

## ACTUAL DAMAGES

■ Williams specifically brings a point of error challenging the sufficiency of the evidence regarding the jury's finding of $8600 in past medical expenses. It argues that appellees failed to establish that this was supported by evidence that the medical expenses were reasonable and necessary. *Transport Concepts, Inc. v. Reeves,* 748 S.W.2d 302, 305 (Tex.App.—Dallas 1988, no writ). On the contrary, the record clearly shows that David Olivo testified on his opinion of the reasonableness and necessity of medical expenses. Because documentary evidence of the medical expenses was also presented, we conclude the record contains both legally and factually sufficient evidence to support the jury's finding. Williams also complains that Olivo was not qualified as an expert to render an opinion on the reasonableness and necessity of the medical charges. However, Williams failed to raise such an objection below, hence waiving the opportunity to present such a complaint on appeal. *See Lakeway Land Co. v. Kizer,* 796 S.W.2d 820, 825 (Tex.App.—Austin 1990, writ denied). Had it done so, Williams probably could raise a valid point about the probative value of Olivo's testimony. *See American Central Ins. Co. v. Melton,* 389 S.W.2d 177, 180 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.). On appeal, however, we cannot determine whether or not Olivo possessed the requisite knowledge to render an opinion on such matters. The point is denied.

## GROSS NEGLIGENCE

Appellants further challenge the sufficiency of the evidence regarding gross negligence. The definition of gross negligence that accompanied the issue in the jury charge substantially complied with the definition of gross negligence as set forth in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 922 (Tex. 1981):

> Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

*Id.* at 920; *see also* Tex.Civ.Prac. & Rem. Code Ann. § 41.001 (Vernon Supp.1995).

The supreme court has explained that the definition of gross negligence encompasses two elements: the "entire want of care" test focuses on the objective nature of the defendant's conduct, while the "conscious indifference" test focuses on the defendant's mental state. *Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 325 (Tex.1993); *see Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21 (Tex.1994).

■ Appellees argue that gross negligence was manifested by the fact Graham was aware of the hazard of leaving equipment around the work site, that Graham anticipated that slips and falls could happen, that Graham was generally responsible for safety at the rig, that the drilling was conducted at a fast pace, and that Graham was not present during the drilling process on the morning of the accident and did not check

the drilling activity before going to bed the night before.

We held above that the jury could have believed Graham was negligent in failing to prevent the haphazard placement of drilling equipment. Nevertheless, under an objective analysis, Graham's conduct did not create an "extreme risk" of harm to Diamond M's employees. *See Alexander,* 868 S.W.2d at 326.

■ At the very most, the evidence at trial demonstrated that Graham was remiss in failing to instruct Diamond M's employees about the handling of certain drilling equipment and in failing to prevent its misplacement. Prior to the accident, there was only one occasion in which Graham asked a Diamond employee to stack casing thread protectors. While this might indicate Graham was negligent since he knew of a potential risk the scattered equipment caused, it does not reflect that he was aware that an untidy work site posed an extreme risk of harm to Diamond M's employees. The first prong of the gross negligence test is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather by a high likelihood of serious injury. *See Moriel,* 879 S.W.2d at 23. No testimony was offered that another accident occurred prior to Olivo's slip and fall, and no testimony was offered showing that the work site was typically cluttered with drilling equipment.

■ Hence, the evidence showed that Graham was simply careless in not monitoring the activities of Diamond M's employees more closely or in not giving them instructions about the safe handling of the equipment. "An act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent. Only if the defendant's act or omission is unjustifiable and likely to cause serious harm can it be grossly negligent." *Id.* at 22.

Although there was testimony from an expert witness that in his opinion Graham acted with conscious indifference, this testimony related to the second prong of the gross negligence test. Moreover, it appears that the expert witness based his opinion on Graham's conduct after the accident occurred,

not before. At any rate, if Graham acted with conscious indifference, it was toward a risk that would not have been perceived as highly likely to cause serious harm. The second prong of the gross negligence test was not met by the evidence presented. In considering only the evidence favorable to the jury's finding, the record does not reveal even legally sufficient evidence to support a finding of gross negligence. The points of error regarding gross negligence are sustained.

## RESPONDEAT SUPERIOR

■ Finally, Williams complains about the sufficiency of the evidence regarding the jury's finding that Graham acted as an employee of Williams, thus allowing Graham's negligence to be imputed to Williams. "The test to determine whether a worker is an employee or an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the employee's work." *Thompson v. Travelers Indem. Co.,* 789 S.W.2d 277, 278 (Tex.1990).

The record reflects Graham's testimony that he considered himself an employee of Williams because Williams controlled his work. He further testified that he reported to Williams's field superintendent and that the field superintendent instructed Graham on all phases of his work. Graham also said that he followed such instructions and had minimal decision-making authority. Graham emphasized that Williams not only told him what to do, but how to accomplish his required tasks. Moreover, two expert witnesses testified that in their opinions, Graham was an employee of Williams. Viewing the evidence in favor of the jury's verdict, we conclude there is sufficient evidence to support its findings. *Stafford,* 726 S.W.2d at 16. Moreover, assessing all the evidence adduced at trial, we cannot say the jury's verdict is manifestly unjust or against the great weight and preponderance of the evidence. *See Pool,* 715 S.W.2d at 635. The point is denied.

## CONCLUSION

Since appellees rested their exemplary damages claim on a finding of gross negli-

gence, we find it unnecessary to address the remaining points of error as they relate to exemplary damages. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 41.003(a) (Vernon Supp. 1995). The jury's finding of gross negligence and the accompanying awards of $500,000 against Williams and $21,800 against Graham in exemplary damages are hereby reversed and rendered in favor of appellants. The judgment is affirmed in all other respects.

We exercise our discretion under rule 89 of the Rules of Appellate Procedure to assess costs of appeal 75% against appellants Clayton Williams, Jr., Inc. and Odis E. Graham, and 25% against appellees David and Rosielinda Olivo.

RICKHOFF, Justice, dissenting.

I agree with the majority and the dissent that the Olivos waived their premise defect claim, thereby making the topic of control a non-issue. The majority, however, reintroduces the problem of control when it holds that a simple negligence submission is supported by the Olivos' allegations. If that is possible, then, after a complete review of the record, I agree with Chief Justice Chapa's concurrence in our original opinion of August 10, 1994.[1] What follows are now my words but once his and are the reasons for finding that no evidence supports a deemed finding of control.

In *Lawson–Avila Construction, Inc. v. Stoutamire,* 791 S.W.2d 584, 588–91 (Tex. App.—San Antonio 1990, writ denied), this court stressed the importance of determining whether the general contractor or property owner/occupier retains control over the independent contractor *in a manner* that imposes a duty of care. *See also* RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965). The contract between the general contractor defendant and its independent contractors in *Lawson–Avila* contained several explicit provisions outlining the control retained by the general contractor. 791 S.W.2d at 589. In contrast, the contract between Williams and Diamond M explicitly states:

*Operator [Williams] shall have no direction or control of Contractor [Diamond M] or its employees and agents except in the results to be obtained.* The work contemplated herein shall meet the approval of Operator and be subject to the general right of inspection herein provided for Operator to secure the satisfactory completion thereof.

The actual performance and superintendence of all work hereunder shall be by Contractor, but Operator or its representatives shall have unlimited access to the premises to determine whether work is being performed by Contractor in accordance with all of the provisions of this Agreement.

(emphasis added). The above paragraphs clearly specify the parties' intent to leave control over the drilling job to Diamond M. The general right retained by Williams to inspect job performance is not sufficient to trigger the duty explained in comment c of the Restatement (Second) of Torts § 414.

In assessing actual control exercised by Williams, the evidence indicates that, although Graham was present at the jobsite, his role was limited to monitoring progress, surveying drilling operations, and completing daily reports. The fact situation in *Lawson–Avila* contrasted significantly; the general contractor supervised various subcontractors on the premises, enforced federal regulations, and was ultimately responsible for the overall performance of the job. 791 S.W.2d at 590–91.

The majority, now joined by Chief Justice Chapa, recognizes a type of control that is unrelated to the thread protector, its location on the ground, and the employer's discretion in running the project. Section 414 of the Restatement (Second) of Torts creates liability for an owner/occupier who causes an injury by his failure to exercise his control of "any part of the work" with reasonable care. The agent's control over one aspect of the job, in this case what was happening below ground, did not make the owner liable for negligence in an unrelated part of the pro-

---

1. The panel opinion of August 10, 1994 was withdrawn on June 7, 1995 by the panel's opinion on appellees' motion for rehearing. In turn, that opinion is withdrawn by today's opinion on appellees' motion for rehearing en banc.

**336**

ject, what was left on the ground. Thus, control over drug testing is not related to this accident; nor are the contract provisions for daywork, tools, drilling fluid, and surveys.

Upon a careful reading of the record, I find there is no evidence to support the deemed finding of control. I would reverse and render.

DUNCAN, Justice, dissenting.

I agree with the majority that the Olivos waived their premise defect cause of action. I further agree that appellants were not required to object to preserve this error. However, I disagree that the Olivos' allegations that Graham and Williams failed to maintain a safe workplace, failed to provide safety devices, and failed to properly supervise the worksite provided a proper basis for submission of, or recovery under, a negligent activity theory. At best, these activities simply created the condition that injured Olivo—the discarded thread protectors lying on the ground beneath the pipe rack. Accordingly, these activities do not form a proper predicate for submission of a simple negligence question. *See Keetch v. Kroger*, 845 S.W.2d 262, 264 (Tex.1992).

In my view, the Olivo's petition, "fairly read, alleged only a claim based upon premises liability." *H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex.1992) (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983)). Therefore, I would reverse the judgment below and render judgment in favor of Graham and Williams.