**DOWNWIND AVIATION,
INC., Appellant,**

v.

**ORANGE COUNTY and Baldwin
Aviation, Inc., Appellees.**

No. 09–87–176 CV.

Court of Appeals of Texas,
Beaumont.

Nov. 3, 1988.

Rehearing Denied Nov. 16, 1988.

David K. Anderson, Caddell & Conwell, Houston, for appellant.

Ed Shettle, Asst. Crim. Dist. Atty., Barbara Jane Barron, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, for appellees.

## OPINION

DIES, Chief Justice.

In 1974, Orange County leased a portion of land located at the Orange County Airport to Professional Aviation Services Company ("Professional"). The tract leased to Professional included a small hangar. The primary term of the lease began January 1, 1975, and ended December 3, 1984, but the tenant had the option to extend the lease for another ten-year period. In 1978, Professional assigned this lease to Downwind Aviation, Inc. ("Downwind"), with Orange County's approval.

In April, 1983, Downwind subleased the property to Baldwin Aviation, Inc. ("Baldwin"), and Baldwin agreed to assume all of Downwind's obligations under the primary lease and to pay rent to Downwind. Two of the obligations Baldwin agreed to assume were expressed in the original lease as follows:

"Tenant further covenants and agrees that it will at all times during the term of this lease, or any extension thereof, at its own expense, maintain and keep in force liability insurance insuring [Orange County] and the Tenant jointly, as their respective interest may appear, in the amount of $100,000.00/$300,000.00 for injury to any one person or any one occurrence and $50,000.00 for property damage, against loss, liability or damage which may result to [Orange County] and/or Tenant, or either of them, from accident or casualty whereby any person or persons whomsoever may be injured or killed or sustain property damage on the leased premises. Tenant shall fur-

nish to [Orange County] a certificate of such insurance."

The lease also provided that if the tenant defaulted in any of the covenants in the lease which it had agreed to keep or perform, and if such default continued for ten days after written notice of such default or breach had been mailed to the tenant, the County could terminate the lease. On July 6, 1983, Julia Bacom, the Orange County Auditor, mailed a letter to George MacDonough, president of Downwind, which stated the following:

"Dear Mr. MacDonough:

"According to Orange County Auditor's records, your lease as a fixed base operator at the Orange County Airport requires that you carry liability insurance holding Orange County harmless for any accidents and mishaps connected with your fixed base operations. The last certificate of insurance you furnished us expired October 6, 1981. *If you do not furnish us with proof of insurance coverage within ten days of the date of this letter,* Orange County will consider the contract as having been breached.

"Although Downwind has signed a sub-lease with Baldwin Aviation, our contract is with Downwind Aviation, and Orange County is looking to Downwind Aviation for prompt payment of the rent as specified under this contract...." (emphasis theirs)

On July 25, 1983, the Orange County Commissioners' Court passed a resolution cancelling this lease with Downwind.

Downwind filed suit alleging that Orange County wrongfully terminated Downwind's lease because proof of liability insurance had, in fact, been provided. Therefore, Downwind alleged, Orange County's wrongful termination of the lease caused damages to Downwind of at least $47,940.00, the minimum rent payable by Baldwin had Downwind exercised its option to extend the term of the lease for another ten years. Downwind also alleged, alternatively, that if Orange County was not provided proof of insurance, such failure to provide proof of insurance constituted a

breach of Baldwin's obligations under its sublease with Downwind, resulting in Downwind's damages as stated above.

Trial was to a jury. The jury found that Orange County wrongfully terminated Downwind's lease and that such termination caused Downwind damage. The jury found that $26,950.00 paid in cash at the time of trial would reasonably compensate Downwind for its damages. The jury found that Baldwin did not breach the terms of its sublease agreement with Downwind.

Downwind moved for judgment against the County based upon the jury finding of a wrongful termination of the lease, and moved that the trial court disregard the jury's finding as to the amount of damages and render judgment in Downwind's favor for $47,950.00. Orange County moved for judgment notwithstanding the verdict because there was no evidence that any certificate of insurance showing Orange County as an insured party was ever provided to the County as required by Downwind's lease. The trial court sustained the County's motion for judgment notwithstanding the verdict and rendered judgment that Downwind take nothing from Orange County or Baldwin.

 Downwind (Appellant herein) perfected this appeal from the judgment of the trial court. By its first point of error Appellant urges that the trial court erred in ruling that there was no evidence to support the jury's finding that Orange County wrongfully terminated the lease because the evidence showed that Baldwin had fulfilled all lease requirements. A trial court's decision to grant a motion for judgment notwithstanding the verdict may be sustained only where there is no evidence upon which the jury could have made the findings relied upon. *Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726, 728 (Tex.1982). In determining whether there was evidence to support a jury finding, all evidence must be considered in the light most favorable to the party against whom the motion is sought and every reasonable inference deducible from the evidence is to be indulged in that party's favor. *Id.*

At trial, Charles Baldwin of Baldwin Aviation, Inc., testified that he had fulfilled his obligations under the sublease agreement with Downwind to provide insurance and to provide proof of insurance to Orange County. The record also contains the following testimony by Mr. Baldwin:

"Q [COUNSEL FOR DOWNWIND:] And when Orange County terminated George MacDonough—or Downwind Aviation's lease, it's your position that you had, in fact, provided liability insurance and provided notice of that insurance to Orange County at that time?

"A [MR. BALDWIN:] For me, yes sir.

"Q [COUNSEL FOR DOWNWIND:] For you as fixed base operator at the Orange County Airport; is that correct?

"A [MR. BALDWIN:] That's correct. I never listed Downwind Aviation on my insurance."

The original liability insurance policy referred to by Mr. Baldwin was issued in 1980 and was renewed so that it was in effect through July 29, 1983. This policy clearly shows Baldwin Aviation, Inc., as the only party insured. Mr. Baldwin identified plaintiff's (Downwind's) exhibit number six as the insurance renewal certificate for the period from July 29, 1982, through July 29, 1983. He stated that according to notations written on the renewal certificate, "8/17/82" and "To Commissioners and County Auditor and Judge," the certificate was sent to Orange County.

Delores Aycock, the insurance agent for Baldwin Aviation, testified that Baldwin purchased an "Owner's, Landlord's and Tenant's" premises liability policy that covered all of the tenant's operations at the Orange County Airport. It was undisputed that the coverage limits of the policy complied with the requirements of the lease between Downwind and Orange County. Ms. Aycock testified that the policy was renewed for the period of July 29, 1982, through July 29, 1983, and that a copy of the renewal certificate was mailed to the Orange County Auditor on August 11, 1982. She stated that the policy would

have covered accidents which might have occurred on the subleased premises in question after Baldwin Aviation acquired its interest in such premises.

■ Ms. Aycock testified that in August of 1982, she prepared and mailed to the Orange County Auditor a letter stating the following:

"Dear [Auditor], please be advised that in reference to the captioned [Baldwin's] policy and renewal of same, that Orange County Airport will be named additional insured."

Therefore, Ms. Aycock testified, as of July 22, 1981, Orange County was an additional insured on Baldwin's policy. She testified that she mailed the renewal certificates on Baldwin's policy to the County Auditor. We find that this testimony of Mr. Baldwin and Ms. Aycock did constitute some evidence that at the time Downwind's lease was cancelled, liability insurance had been provided and that proof of such insurance had been furnished to the County. Appellant's first point of error is sustained.

Orange County also moved for judgment notwithstanding the verdict on the ground that there was no evidence that Orange County had approved the sublease agreement between Baldwin Aviation and Downwind Aviation and that, therefore, proof of Baldwin's insurance would not have constituted evidence or any proof of insurance concerning Downwind's lease with the County. By its second point of error, Appellant Downwind urges that the trial court erred in granting judgment notwithstanding the verdict on such ground because Orange County's approval was established as a matter of law under *TEX.R.CIV.P. 93* and under the common law presumption that government officials act legally and with authority. This disputed issue concerns whether County Judge James Stringer signed and approved the sublease agreement with proper authority of the Orange County Commissioners' Court.

■ We find that the testimony of Mr. Baldwin makes it unnecessary to address the arguments over whether *Rule 93* or common law removed this issue from the case. In the cross-examination of Mr.

Baldwin by counsel for Orange County in reference to the sublease agreement, we find the following:

"Q [COUNSEL FOR THE COUNTY:] Now, actually, the Commissioners' Court is located on the second floor. Are you sure whether or not it was signed in this courtroom or the courtroom down below?

"A [MR. BALDWIN:] It must have been down below.

"Q [COUNSEL FOR THE COUNTY:] That was simply the consent of the county to allow the sublease; is that what you're referring to?

"A [MR. BALDWIN:] That's correct."

Thus there was some evidence of probative force that the County did consent to the sublease agreement. Therefore, the trial court erred in granting judgment notwithstanding the verdict if it relied on this ground to do so. *Dowling*, 631 S.W.2d at 728. Appellant's second point of error is sustained.

■ Appellee Orange County has filed a cross-point of error urging that the finding of the jury that Orange County wrongfully terminated the lease was based upon factually insufficient evidence. In reviewing attacks upon the factual sufficiency of the evidence to support a jury verdict, we must consider and weigh all of the evidence in the case and only set aside the verdict and remand the case if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ After reviewing all of the evidence in the case, we conclude that the finding of the jury that Orange County wrongfully terminated the lease was so against the great weight and preponderance of the evidence as to be manifestly unjust. It was undisputed that Downwind's insurance policy covering the leased premises lapsed in March, 1983. Mr. Baldwin did state that he had obtained insurance and provided proof of such insurance "for me" to Orange County. However, the insurance policy obtained by Baldwin, and renewal

certificates thereof which were provided to Orange County, listed Baldwin Aviation, Inc., as the only insured. Mr. Baldwin testified that the renewal certificate for July 1982 through July 1983 was what he relied upon to establish his claim that he had insurance in effect at the time the County terminated the lease. The notations written on this certificate were also used to show that proof of insurance coverage had been mailed to Orange County.

While this evidence proved that Baldwin was insured when the lease was cancelled, the lease required that the tenant provide insurance for Orange County as well, and proof of such insurance. The policy and certificates of renewal which Ms. Aycock mailed to Orange County contain no proof whatever that Orange County was covered by such policy. The only evidence that proof of Orange County's coverage was ever provided was the oral testimony of Ms. Aycock that her letter of July 22, 1981, to the Orange County Auditor verified that Orange County was covered under the policy. Ms. Aycock testified under cross-examination that this letter verified that she had ordered the endorsement from the insurance company adding Orange County as an additional insured on that date. She also testified that she could not find such an endorsement from the insurance company in her complete records of Baldwin's account.

We find that Ms. Aycock's conclusion that her letter of July 22, 1981, verified present coverage for Orange County to be greatly outweighed by her own testimony that the letter represented her ordering of such coverage on that date. Furthermore, there was no evidence that the insurance company ever actually did add Orange County as an insured, or that proof of such action was ever provided to Orange County. Therefore, Appellee Orange County's cross-point is sustained.

By its fourth point of error, Appellant Downwind urges that the trial court erred in refusing to enter judgment for $47,-950.00 because damages in this amount were conclusively established by the evidence. The only damage issue submitted to the jury reads as follows:

"What sum of money, if any, if now paid in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Downwind Aviation, Inc., for its damages, if any?

"Answer in dollars and cents, if any.

"Answer $26,950.00"

Appellant made no objection of any kind to the submission of this issue to the jury. The jury was not given any instruction regarding the proper measure of damages. Appellant made no complaint as to the lack of such instructions.

■■■ Appellant's motion for judgment included a motion to disregard the finding of the jury as to damages. The issue submitted clearly called upon the jury to reduce any damages they found to present cash value. There was no evidence presented concerning the discounting of a sum of money owed in the future to present cash value. Even if Appellant did conclusively prove that the sublease would have generated a profit of $47,950.00 during the period between termination of the lease and the expiration of the ten-year option, we cannot say that the present value of such damages was conclusively proved to be $47,950.00. The trial court may only disregard a finding of the jury and substitute its own finding where the evidence conclusively establishes the finding of the trial court. *Brownsville and Matamoros Bridge Co. v. Null*, 578 S.W.2d 774, 780 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Appellant's fourth point of error is overruled.

No party has appealed from that portion of the trial court's judgment which disposed of Appellant's action against Baldwin Aviation, Inc. Therefore, the trial court's judgment as to Baldwin Aviation, Inc., is affirmed and need not be tried again. *George v. Vick*, 686 S.W.2d 99 (Tex. 1984). For the reasons stated in this opinion, we reverse that portion of the trial court's judgment concerning Appellant's action against Orange County and remand to the trial court only that part of this cause concerning the liability of Orange

County for the damages incurred by Appellant as found by the jury in the first trial.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.