Miriam R. ETHERIDGE, Appellant,

v.

OAK CREEK MOBILE HOMES, INC., Vidor Mobile Homes Center, Inc., and Green Tree Acceptance of Louisiana, Inc., Appellees.

No. 09–97–198 CV.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 3, 1998.

Decided March 11, 1999.

Charles Gordon Reed, Beaumont, for appellant.

Jeffery R. Seckel, Hale, Aston, Seckel & Taubenfeld, Dallas, C. Lynn Daughrity, Port Arthur, Xenia H. Tillery, Tillery, Cavanaugh & Barnes, Baton Rouge, La., for appellees.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

EARL B. STOVER, Justice.

Appellant Miriam Etheridge appeals from the trial court's granting of a judgment notwithstanding the verdict in favor of appellees Oak Creek Mobile Homes, Inc. ("Oak Creek") and Vidor Mobile Homes Center, Inc. ("Dealer").

In June 1991 Etheridge purchased an Oak Creek manufactured home from Dealer; the home was delivered to Etheridge's site a month later. Although appellant's order for the manufactured home contained certain specifications, the home, as delivered, did not conform to those specifications. In addition, the mobile home, according to Etheridge, had numerous defects that were never satisfactorily corrected.

## PROCEDURAL HISTORY

Etheridge sued Oak Creek and Dealer for violations of the Texas Deceptive Trade Practices Act (DTPA) and common law misrepresentation. Etheridge also sued Green Tree Acceptance of Louisiana, Inc. ("Green Tree"), the holder of the note on the mobile home, for alleged violations of the federal Fair Debt Collections Practices Act[1] and the Texas Debt Collection Practices Act.[2] Seeking damages and judicial foreclosure of its lien on the mobile home, Green Tree filed a counterclaim against Etheridge. Finding that Oak Creek and Dealer both violated the DTPA and that Oak Creek "ma[d]e a negligent misrepresentation on which Miriam Etheridge justifiably relied," the jury award-

---

1. The federal Fair Debt Collection Practices Act is found at 15 U.S.C. §§ 1692–1692n (1998).

2. The Texas Debt Collection Practices Act has been codified at Tex. Fin.Code Ann. §§ 392.001–392.404 (Vernon 1998).

ed Etheridge $76,400, including prejudgment interest. After receiving the jury verdict, the trial court granted a judgment notwithstanding the verdict and ordered that Etheridge take nothing against Oak Creek, Dealer, and Green Tree. The final judgment further ordered that Green Tree have judgment against Etheridge on its counterclaim for $38,569.48, the amount of the accelerated balance of the promissory note and Green Tree's attorney fees. Etheridge appeals the take nothing judgment in favor of Oak Creek and Dealer and brings forward three points of error.[3]

## POINTS OF ERROR ONE AND TWO

In points of error one and two, Etheridge contends the trial court erred in not allowing her to testify concerning (1) her damages and (2) the market value of the manufactured home. She preserved her complaint regarding the exclusion of her testimony on damages by presenting a bill of exception to the trial court in which the proffer of evidence revealed the market value of the home, as received, to be $15,000. Already in evidence was the purchase price of $46,500, from which the jury could have inferred the market value of the home as it was represented to her.

Prior to trial, Oak Creek and Dealer both propounded interrogatories asking Etheridge to identify: (1) each person with knowledge of relevant facts; (2) each expert witness and the subject matter of his testimony; and (3) each item of damages suffered, including the type, the amount, the persons with knowledge of each type of damages, and any documents memorializing the damages. In her responses to Oak Creek's interrogatories, Etheridge identified herself as a fact witness, but did not identify herself as an expert witness or as someone with knowledge of the damages. In her responses to Dealer's interrogatories, appellant failed to identify herself as a witness of any type—whether as a fact witness, an expert witness, or as someone who had knowledge of the damages.

The issue before us does not turn on whether Etheridge should have been allowed to testify as a fact witness. She testified as such without objection. Under *Smith v. Southwest Feed Yards*, 835 S.W.2d 89 (Tex. 1992), and the facts of the instant case, her testimony as a party witness to the facts was proper. Moreover, as an owner of the property, she was qualified to give her opinion of its market value as long as her testimony showed the value referred to market value and not intrinsic value. *See Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex.1996); *Porras v. Craig*, 675 S.W.2d 503, 504–05 (Tex.1984). Therefore, Etheridge did not have to list herself as an expert witness in order to testify regarding the property's value.

The problem for Etheridge, and, indeed, the reason given by the trial court for excluding her testimony on damages, was her failure to answer completely or supplement the specific interrogatory question on damages. Oak Creek's interrogatory and Etheridge's response[4] are set out below:

Please set forth each and every item of damage which you claim to have suffered in connection with the conduct which you seek from Oak Creek. In connection with your answer, you are requested to describe the specific "types" of damages which you are contending to have sustained, the "amount" of each such "type" of damages, the manner in which you have calculated each such "amount", identify the persons with knowledge of each such "type" of damages, and describe any and all documents memorializing the "damages" which you claim to have sustained.

| ANSWER: | Actual damages: | |
|---|---|---:|
| | Down payment (check) | $10,000.00 |
| | Extra payment to Vidor Mobile Homes (check) | 370.00 |
| | Obligation under promissory note | 63,475.20 |
| | Repair to back door lock (per invoice) | 77.76 |
| | Mental anguish (estimated) | 30,000.00 |
| | TOTAL | $103,922.96 |
| | Attorney's fees through time of trial (estimated) | $ 41,569.18 |

---

3. Etheridge has not appealed Green Tree's judgment against her.

4. The interrogatory propounded by Dealer and Etheridge's answer are substantially the same as that set out above.

Etheridge's answer does not include the name of any person with knowledge of the damages.

The question before us then is the appropriateness of the trial court's application of Rule 215.5 in excluding Etheridge's testimony on that issue. Rule 215.5 provides as follows:

. **Failure to Respond to or Supplement Discovery.** A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

Although case law qualifies Etheridge as an owner to testify to market value, she still must satisfy the requirements of TEX.R. CIV. P. 215.5, answer the interrogatory questions propounded to her, and supplement those answers if they are incomplete. If a party fails to do so, without good cause, she suffers the penalties exacted by Rule 215.5.

■ The salutary purpose of Rule 215.5 is to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex.1992). The rule is mandatory, and its sole sanction—exclusion of evidence—is automatic, unless there is good cause to excuse its imposition. *Id.* The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances. *Id.* The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony; but the trial court has no discretion to admit testimony excluded by the rule without a showing of good cause. *Id.*

Here, Etheridge was asked to identify persons with knowledge of the damages. She did not name herself or anyone else as having that knowledge and, according to Rule 215.5, cannot testify to those matters. She further was asked to set out her damages. Although she does not identify any person who can testify regarding her damages, her answer does recite the amounts of her down payment and the promissory note, as well as amounts for mental anguish damages and the repair of a lock.

■ Factors that have been considered in determining whether the trial court abused its discretion in determining the existence of good cause include the following:

1. The witness was a party and the only litigant against her adversaries. *Smith v. Southwest Feed Yards*, 835 S.W.2d 89, 90 (Tex.1992).

2. The witness filed a pleading. *Id.*

3. The witness personally answered the interrogatories. *Id.* at 91.

4. The witness was clearly identified as having knowledge of relevant facts. *Rogers v. Stell*, 835 S.W.2d 100 (Tex. 1992).

5. The witness was deposed. *Henry S. Miller Co. v. Bynum*, 836 S.W.2d 160, 162 (Tex.1992).

6. The answers to all the interrogatories, rather than one isolated answer, are considered. *Rogers*, 835 S.W.2d at 101; *Southwest Feed Yards*, 835 S.W.2d at 91.

In the instant case, Etheridge was the only plaintiff in her suit against Oak Creek and Dealer. Her petition included a pleading for damages under the DTPA and the common law. She was the person who answered the interrogatories and, through her responses, clearly identified herself as a person having knowledge of relevant facts. Although she did not list herself as a person with knowledge of damages, she did recite certain elements and amounts in her answer. In light of her itemization of dollar figures on the damages question and in light of her other responses detailing the defects in the mobile home, it was clear she was a person with

knowledge of damages. Furthermore, she was deposed.[5]

The trial court has the discretion to determine whether the party calling the witness met her burden of showing good cause. *Alvarado*, 830 S.W.2d at 914; *Morris v. Short*, 902 S.W.2d 566, 570 (Tex.App.—Houston [1st Dist.] 1995, writ denied). To establish a clear abuse of discretion, the complaining party must show that the trial court's action was arbitrary or unreasonable in light of all the circumstances of the particular case. *Morris*, 902 S.W.2d at 570. In view of the factors listed herein, we conclude the trial judge abused his discretion in excluding Etheridge's testimony on damages. Furthermore, such exclusion was harmful, since no evidence regarding the market value of the home as received came in otherwise. Points of error one and two are sustained.

## POINT OF ERROR THREE

In point of error three and her related argument, Etheridge contends the trial court erred in granting the judgment notwithstanding the verdict, since there was sufficient evidence of Etheridge's damages and the appellees' deceptive acts and misrepresentations. The standard of review used to determine the validity of a trial court's granting or refusing a judgment notwithstanding the verdict is the same as that used for review of a "no evidence" claim. *Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726, 728 (Tex.1982). If more than a scintilla of evidence exists to support the jury's verdict, an appellate court must reverse the judgment notwithstanding the verdict. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex.1990). In determining whether more than a scintilla of evidence exists, we review only the evidence supporting the jury's verdict and disregard all evidence and inferences to the contrary. *Id.* More than a scintilla of evidence exists if the record reveals some probative evidence to support the verdict, no

matter how small. *Richardson v. Wal–Mart Stores, Inc.*, 963 S.W.2d 162, 164 (Tex.App.—Texarkana 1998, no pet.).

In addition to other grounds, both Oak Creek and Dealer sought a JNOV on the ground that there was "no evidence to support the jury's finding to question number 6 regarding damages." Question number 6 reads as follows:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [sic] Miriam Etheridge for her damages, if any, that resulted from such conduct.

Consider the following elements of damages, if any, and none other.

a) The difference, if any, in the value of the manufactured home as it was received and the value it would have had if it had been as represented. The difference in value, if any, shall be determined as of July, 1991.

b) The reasonable and necessary costs for the loss of the use of the manufactured home.

c) The reasonable value of the time spent and the expenses incurred by Miriam Etheridge correcting or attempting to correct the problems with or caused by the manufactured home defects.

Do not add any amount for interest on past damages, if any.

Answer in dollars and cents.

Answer: $32,200.00

The allegations in the motions for JNOV are correct; there is no evidence in the record to support the jury's damage findings in question 6, since appellant was not allowed to testify to the difference between the home's market value as represented and its value as received. In addition, there was no evidence regarding the "costs of loss of use of the home" or the "reasonable value" of the time

---

**5.** We do not have Etheridge's complete deposition in the record before us. However, in the excerpts we do have, she testified she had not formed an opinion as to how the presence of a small shower, rather than a large shower (which she had ordered), affected the value of the home. At the bench hearing, the trial judge referred to this deposition testimony as bearing upon his decision to exclude her testimony on damages. In view of the interrogatories as a whole and the other factors we have listed, we do not believe this statement at her deposition should preclude her testimony on damages at trial.

spent or expenses incurred in correcting or attempting to correct the problems with the home.

▪ In addition to the damages issue, Oak Creek's motion sought a JNOV on other grounds: (1) no evidence that Oak Creek engaged in any of the deceptive acts set forth in the jury questions; (2) no evidence that Oak Creek made any negligent misrepresentation contained in jury question 5; and (3) no evidence that would support the jury's "knowing" findings in jury questions 2 and 4. As to the DTPA grounds, our review of the evidence presented to the jury reveals there was more than a scintilla of evidence supporting the jury's findings of deceptive acts by Oak Creek. The Oak Creek brochure, given to Etheridge in the package she received with her purchase of the home, stated that Oak Creek homes had "a quality beyond compare" with "[o]nly the highest quality materials and superior construction." Etheridge's testimony pointed to numerous defects in the home—testimony which amounted to more than a scintilla of evidence that statements in the brochure were false, misleading, and deceptive. Listed below are some of the alleged defects in the manufactured home:

1. After Etheridge took the first shower in her home, the bathroom carpet, wall panels in both the bathroom and in her bedroom, and the bedroom carpet were soaked with water.

2. The molding was not cut and installed properly in the living room.

3. Staple holes were present in the walls throughout the trailer; some of the staples were not pushed in all the way and were left sticking out.

4. In the dining room, the panels had numerous holes in them.

5. On window facings, nails were sticking out. Some of them were indented.

6. In the second living room, there was a crack in the tile in the fireplace.

7. The mantle on the fireplace did not fit flush with the wall.

8. On the cabinet over the stove, there was just a raw edge to the paneling. 9. The light over the bar was off center.

10. The three other bedrooms also had staples in the walls, and the molding did not fit properly.

11. There was a huge glue spill in the second bedroom. "It looked like a five gallon bucket print on the carpet plus all the glue was around it."

12. In one of the bathrooms, the bathtub was chipped; there were gouges in the tub.

13. The closet door in the second bedroom would not close.

14. In the end bedroom, the door would not stay open.

15. The support beam at the end of the trailer was crooked.

16. The top of the front door to the trailer was split.

17. One of the windows in the second living room had been broken during transport.

18. The exterior siding was "real wavy down the sides of the trailer."

19. Many of the inside walls had large patches of glue on them.

Although there was additional testimony regarding other defects in the home, the above detailing of evidence reveals there was more than a scintilla of evidence that (1) Oak Creek represented that goods or services would be of a particular quality when they were of another; (2) the representation was false, and (3) Etheridge relied on it.

▪ Moreover, there was also more than a scintilla of evidence of a "knowing" violation of the DTPA. A violation of the DTPA is committed "knowingly" when the defendant has actual awareness of the offending conduct or breach of warranty giving rise to the consumer's claim. *Parkway Co. v. Woodruff,* 857 S.W.2d 903, 912 (Tex.App.—Houston [1st Dist.] 1993), *aff'd as reformed,* 901 S.W.2d 434 (Tex.1995). Actual awareness may be inferred from the circumstances. *Parkway Co.,* 857 S.W.2d at 912; *K.C. Roofing Co. v. Abundis,* 940 S.W.2d 375, 377 (Tex.App.—San Antonio 1997, writ denied). We conclude that actual awareness of a violation may be inferred from the conduct of Oak Creek's representatives in refusing to make any further repairs on the home after its

third repair attempt and then communicating that fact to Ms. Etheridge. With the aid of numerous photographs made after Oak Creek had informed Etheridge that no further repairs would be made, Etheridge described the multiple defects still not repaired. Etheridge's testimony presents more than a scintilla of evidence of a knowing violation.

Although there was more than a scintilla of evidence on the issues of deceptive acts, a knowing violation, and misrepresentation, there was no more than a scintilla of evidence on damages. Consequently, the trial court did not err in granting Oak Creek's motion for JNOV.

We turn now to the judgment notwithstanding the verdict granted by the trial court in favor of Dealer. In addition to claiming there was no evidence on damages, Dealer's motion for JNOV also contended there was no evidence that Dealer's conduct was a producing cause of damages and no evidence that Dealer made a misrepresentation which induced Etheridge to enter into the transaction.

■ Based on our review of the evidence before the jury, we conclude there was more than a scintilla of evidence that the conduct of Dealer's representative, Charles Wright, was a producing cause of Etheridge's damages and that Wright's misrepresentation regarding quality and warranty induced her to enter into the transaction. Etheridge testified that Wright told her a home manufactured by Oak Creek was a "Cadillac." According to Etheridge, Wright further told her to sign off on the service orders from Oak Creek to the effect that she was satisfied with Oak Creek's repairs on her home; he assured her he would see that the repairs were taken care of properly by Oak Creek. Etheridge relied on those representations and signed the work orders approving the repairs accordingly.

Unlike the evidence on the other grounds on which Dealer sought a JNOV, the evidence supporting the jury's answer to the damages question was no more than a scintilla, since the trial court did not allow Etheridge to testify to her damages. Consequently, the trial court did not err in granting a JNOV in favor of Dealer. There being no error in the trial court's granting of the two motions for JNOV, we overrule point of error three.

However, because we conclude, as detailed in our holding under points of error one and two, that the trial court erred in excluding Etheridge's testimony on damages, we reverse the judgment of the trial court in its entirety and remand the case for a new trial.

REVERSED AND REMANDED.